**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| MARILYN C. JONAS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>KELLY AYOTTE, in her official capacity as Governor of the State of New Hampshire, et al.,<br><br>*Defendants*. | Civil Action No. 26-cv-00600-LM-TSM |

**PLAINTIFFS' MOTION TO STAY CASE**

Pursuant to Local Rule 7.1, Plaintiffs Marilyn C. Jonas and Gordon-Darby Holdings, Inc. ("Gordon-Darby") respectfully request that the Court stay this case and suspend all currently applicable deadlines pending final action by the U.S. Environmental Protection Agency ("EPA") in two rulemaking proceedings that may directly affect the issues presented in this litigation.

This case is a citizens' enforcement suit under the federal Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1), alleging that Defendants, New Hampshire state officials acting in their official capacities, unlawfully terminated the state's motor vehicle inspection and maintenance ("I/M") program. Plaintiffs allege that Defendants are in violation of the I/M program requirements currently codified in New Hampshire's federally enforceable state implementation plan ("SIP"). Although New Hampshire has repealed its I/M program as a matter of *state* law, that program's requirements have been incorporated into the Code of Federal Regulations, remain in effect as a matter of federal law, and will remain in effect unless and until EPA takes final action approving a revised SIP removing the I/M program. In fact, in prior litigation filed before the I/M program's repeal took effect, the defendant state officials did not dispute that they would be in violation of

the CAA once the program was no longer being implemented. *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, 817 F. Supp. 3d 82, 98 (D.N.H. 2026).

After Plaintiffs commenced the present suit, EPA published two notices of proposed rulemaking that, if both finalized, would remove the I/M requirements from New Hampshire's SIP. 91 Fed. Reg. 51644 (Aug. 11, 2026) ("Proposed OTR Removal"); 91 Fed. Reg. 51640 (Aug. 11, 2026) ("Proposed SIP Revision"). EPA has represented that it expects to take final action on these proposals by the end of 2026.[1] Because EPA's rulemakings bear directly on Defendants' liability for the violations alleged in this suit, Plaintiffs request that the Court hold this case in abeyance pending EPA's final action in both rulemakings. Judicial economy strongly favors the requested stay because if EPA takes final action removing the I/M program requirements from New Hampshire's SIP and those actions are upheld after judicial review (if any), it could resolve some or all of the issues raised in this litigation without the need for judicial resolution.

If the Court grants the requested stay, Plaintiffs propose that the Court direct the parties to file motions to govern further proceedings within 75 days after EPA publishes notice of its final actions on both rulemakings in the Federal Register. The parties' motions to govern would present their respective positions as to how this litigation should proceed in light of EPA's final actions, including (as necessary) proposed schedules for Defendants' answer or other responsive filing under Rule 12 and any other proposed motions practice. The requested 75-day period is necessary for the parties to determine whether any person will file petitions for review of one or both of EPA's actions under 42 U.S.C. § 7607(b)(1) within the 60-day period provided under the CAA.

[1] EPA, News Release, "EPA Expedites Review of Requests from New Hampshire Under the Clean Air Act" (Mar. 23, 2026), https://www.epa.gov/newsreleases/epa-expedites-review-requests-new-hampshire-under-clean-air-act.

Pursuant to Local Rule 7.1(c), Plaintiffs sought Defendants' concurrence in this Motion. Counsel for Defendants represented that they do not assent to the requested stay because Plaintiffs would not preemptively agree to dismiss this litigation as moot following the stay if EPA takes final action approving removal of the I/M program from New Hampshire's SIP. Counsel for Defendants further represented that they intend to file an objection to this Motion.

## BACKGROUND

Under the CAA, EPA establishes and periodically revises national ambient air quality standards ("NAAQS") for certain pollutants, including ozone, at levels set to protect the public health and welfare. 42 U.S.C. § 7409; 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19. Each state must develop a SIP that "provides for implementation, maintenance, and enforcement" of the NAAQS in the state. 42 U.S.C. § 7410(a)(1). A SIP must include "enforceable emission limitations and other control measures … as may be necessary or appropriate to meet the" CAA's requirements, as well as "a program to provide for the enforcement of" these measures and "necessary assurances that the State … will have adequate personnel, funding, and authority under State … law to carry [them] out." *Id.* § 7410(a)(2)(A), (C), (E).

For states with areas that EPA designates as not meeting the NAAQS, known as "nonattainment areas," the CAA sets forth additional requirements that must be addressed in the SIP. *See id.* §§ 7410(a)(2)(I), 7501-7515. Several provisions of the CAA require states to develop I/M programs that reduce emissions of ozone-forming pollutants from motor vehicles. For states with ozone nonattainment areas classified as "moderate" nonattainment, the SIP must include a "basic" I/M program. *Id.* § 7511a(b)(4). For nonattainment areas classified as "serious" or worse, the SIP must include a more stringent "enhanced" I/M program for vehicles registered in each urbanized area with a 1980 population of 200,000 or more. *Id.* § 7511a(c)(3).

Congress also created an "ozone transport region" ("OTR") consisting of several northeastern states, including New Hampshire, to better control the interstate transport of ozone and ozone-forming pollutants among these states. *Id.* § 7511c. The OTR states must meet additional SIP requirements, including the adoption of an enhanced I/M program for each metropolitan statistical area with a population of 100,000 or more. *Id.* § 7511c(b)(1)(A).

EPA reviews and either approves or disapproves states' SIPs. *Id.* § 7410(a), (k). EPA must proceed through notice-and-comment rulemaking to act on a state's SIP submission, and its decision is a final agency action subject to judicial review in the courts of appeal. *Id.* § 7607. Once approved, the SIP's contents are incorporated into federal law and are federally enforceable. *See id.* §§ 7413, 7604. If a state wants to amend its SIP, it may submit a revised SIP to EPA for review and approval, *id.* § 7410(*l*), but the state's approved SIP remains in effect and federally enforceable unless and until EPA approves the revision. *Gen. Motors Corp. v. United States*, 496 U.S. 530, 540 (1990).

New Hampshire is required to maintain an I/M program in its SIP for portions of the state because it is part of the OTR and because some counties were formerly designated as serious or moderate nonattainment areas for the ozone NAAQS. To satisfy these requirements, New Hampshire adopted (and EPA approved) a statewide I/M program as part of its federally enforceable SIP. *See* 40 C.F.R. § 52.1520(c) (listing N.H. Code Admin. R. chapters Saf-C 3200 and Saf-C 5800 among EPA-approved regulations); 89 Fed. Reg. 33232 (Apr. 29, 2024) (approving most recent revisions to New Hampshire I/M regulations). The New Hampshire Department of Safety ("NHDOS") has primary responsibility for overseeing the I/M program pursuant to state statutes authorizing it to require vehicle inspections, promulgate implementing regulations, and enforce those requirements. *See, e.g.*, RSA §§ 266:1, 266:1-a (2024). New

Hampshire's program requires annual inspection of all passenger vehicles, including both a computer-based analysis of the vehicle's onboard diagnostic system ("OBD") and an "enhanced safety inspection" of emissions-related equipment and systems for light-duty vehicles less than 20 model years old. N.H. Code Admin. R. Saf-C 3210.05(a), 3222.01, 3218.01, 3219.01, 3220.01-06.

In June 2025, the New Hampshire General Court passed legislation known as House Bill 2 ("HB2") containing provisions eliminating the state's I/M program. 2025 N.H. Laws Ch. 141, §§ 141:244-141:256. HB2 repealed the statutory provisions underlying both the emissions inspection program and the related program for vehicle safety inspections, including the provisions: authorizing NHDOS to require inspections and establishing the frequency and timing of such inspections; establishing the fee for inspection stickers; providing for enforcement against motorists and inspection stations; and specifying inspection requirements for emission control equipment and OBD systems. *Id.* § 141:253 (repealing, *inter alia*, RSA §§ 260:6-b, 266:1, 266:1-a, 266:2, 266:5, 266:6, and 266:59-b). HB2 also defunded New Hampshire's motor vehicle air pollution abatement fund, which pays for the I/M program's administration. *Id.* § 141:253(I).

HB2's repeal provisions took effect without any EPA approval. The bill required the New Hampshire Department of Environmental Services ("NHDES") to *submit* a SIP revision to EPA seeking to "alter the emissions testing program consistent with" HB2. *Id.* § 141:254. But the repeal is effective regardless of whether, when, or how EPA acts on any such submission. *Id.* § 141:256(II), (III). In particular, under HB2 the repeal of NHDOS's authority to require vehicle inspections (which underpins the entire program) took effect on January 31, 2026.

Pursuant to HB2, on December 24, 2025, NHDES submitted two documents to EPA for review and approval. The first was a petition to remove New Hampshire from the OTR. *See* ECF 1 ("Compl.") ¶ 115. If granted, New Hampshire's petition would relieve the state of its obligation

to maintain an active I/M program in its SIP under 42 U.S.C. § 7511c by virtue of its inclusion in the OTR. Second, NHDES submitted a proposed SIP revision that would remove the I/M program requirements from New Hampshire's SIP. *See* Compl. ¶ 112. If EPA approves this SIP revision, New Hampshire's I/M program will no longer remain in effect under federal law.

EPA did not act on either of NHDES's submissions before HB2's repeal provisions took effect on January 31, 2026. Nonetheless, Defendants proceeded to terminate New Hampshire's I/M program after that date. In particular, on February 13, 2026, NHDOS informed the public that the I/M program was "suspended until further notice," revoked licensed inspection stations' authority to conduct inspections and issue inspection stickers, and confirmed that its contract with Gordon-Darby's subsidiary as the vendor hired to administer the I/M program had been terminated. *See* Compl. ¶¶ 129-131. Since that time, Defendants have not resumed implementation or enforcement of the I/M program codified in New Hampshire's applicable SIP.

Plaintiffs commenced this litigation on July 22, 2026.[2] *See* Compl. The Complaint asserts a single claim for relief under the CAA's citizen suit provision, alleging that Defendants are "in violation of" an "emission standard or limitation" under the CAA because they have ceased implementing the I/M program requirements codified in New Hampshire's applicable SIP. Compl. ¶¶ 138-147; *see* 42 U.S.C. § 7604. Defendants' answer or other responsive filing is currently due by Monday, September 21, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(ii) (setting answer deadline 60

---

[2] Plaintiff Gordon-Darby previously filed a citizen suit against two of the Defendants here on December 8, 2025. On January 27, 2026, the Court preliminarily enjoined those Defendants from terminating the I/M program unless and until EPA approved a revised SIP removing the program. *Gordon-Darby Holdings, Inc.*, 817 F. Supp. 3d at 108. The First Circuit stayed the preliminary injunction pending appeal, holding that by filing suit before the I/M program's termination, Gordon-Darby had likely commenced its litigation before a SIP violation occurred. *Gordon-Darby Holdings, Inc. v. Quinn*, 174 F.4th 255 (1st Cir. 2026). Gordon-Darby voluntarily dismissed its previous suit without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

days after request for waiver of service was sent for defendants who timely waive service); ECF 1-2 to 1-11 (requesting waiver of service on July 22, 2026); ECF 10 (waiving service as to all Defendants).

On August 11, 2026, EPA published two notices in the Federal Register of its proposed actions in response to New Hampshire's December 24, 2025 submissions. 91 Fed. Reg. at 51640; 91 Fed. Reg. at 51644. In the Proposed OTR Removal, EPA proposes to grant New Hampshire's petition to leave the OTR. 91 Fed. Reg. at 51645. Based on the analysis submitted by NHDES, EPA proposes to find that New Hampshire meets the CAA's criteria for removal at 42 U.S.C. § 7506a(a)(2). *Id.*

Separately, in the Proposed SIP Revision, EPA proposes to conditionally approve New Hampshire's submission removing the I/M program requirements from its SIP. 91 Fed. Reg. at 51640. Based on NHDES's analysis and EPA's Proposed OTR Removal,[3] EPA proposes to find that New Hampshire's revised SIP substantially meets the criteria for approval under 42 U.S.C. § 7410(*l*). *Id.* at 51643. EPA proposes only to *conditionally* approve the SIP revision, however, because it has identified a legal defect in New Hampshire's submission. Specifically, while New Hampshire's submittal would remove the I/M program in its entirety, the CAA requires that the I/M program at least remain in New Hampshire's SIP as a "contingency measure" to be activated in the event of a NAAQS violation. *Id.*; *see* 42 U.S.C. § 7505a(d). In a June 11, 2026 letter, NHDES committed to address this deficiency by submitting an additional SIP revision to EPA requesting that the I/M program be included on the SIP's list of potential contingency measures. 91 Fed. Reg. at 51641. Based on this commitment, EPA proposes to conditionally approve the SIP revision. *Id.*

---

[3] EPA states that it will not finalize the Proposed SIP Revision unless it also takes final action granting New Hampshire's petition for removal from the OTR. *Id.* at 51640 n.2.

at 51643. NHDES must submit its supplemental SIP revision to EPA within one year after a final conditional approval. *Id.* at 51641. If NHDES fails to meet that deadline, or if EPA disapproves the supplemental SIP submission, then EPA's conditional approval will convert to disapproval and the I/M program will be restored as an active control requirement of New Hampshire's SIP. *Id.*

Public comments on both proposed rules are due by September 25, 2026. *Id.* at 51640. EPA expects to take final action on both proposals by the end of 2026. *Supra* n.1.

**ARGUMENT**

This Court has broad discretion to control its own docket, including to stay proceedings as appropriate. *Torres-Ronda v. Nationwide Mutual Ins. Co.*, 18 F.4th 80, 85 (1st Cir. 2021); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In weighing whether to grant a stay, "there must be good cause for [the stay's] issuance; [it] must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Wells Fargo Fin. Leasing, Inc. v. Tulley Auto. Grp., Inc.*, No. 16-cv-218-LM, 2016 WL 5660290 (D.N.H. Sep. 29, 2026) (McCafferty, J.) (quoting *Marquis v. FDIC*, 965 F.2d 1148, 1154-55 (1st Cir. 1992)).

Here, good cause exists to stay proceedings in this litigation and suspend any currently applicable deadlines to await EPA's final action on its proposed rulemakings. This case involves a single cause of action under the CAA alleging that Defendants are in violation of the I/M program requirements in New Hampshire's currently applicable SIP. EPA has now proposed to remove those requirements from New Hampshire's SIP. If EPA finalizes both rulemakings as proposed, then Defendants' failure to implement the I/M program would no longer violate New Hampshire's applicable SIP. And unless one or both of EPA's final actions is reversed—either because of a

successful judicial challenge under 42 U.S.C. § 7607 or because New Hampshire fails to satisfactorily address the terms of EPA's conditional approval—then this change in New Hampshire's SIP could resolve Plaintiffs' claims in this litigation.

To be sure, EPA's proposed actions are just that—proposals—and do not themselves change the contents of New Hampshire's SIP or Defendants' obligations under that SIP. A state's applicable SIP remains in effect and federally enforceable unless and until EPA takes final action approving a revision, even where the state has submitted a revised SIP for EPA's consideration. *See Gen. Motors Corp.*, 496 U.S. at 540. Defendants thus remain in violation of their SIP obligations notwithstanding EPA's proposals. Moreover, EPA's final actions in one or both rulemakings may differ from what it has proposed, particularly if the public comment process leads EPA to revisit its current position.

Nonetheless, judicial economy favors staying this case to await the outcome of EPA's rulemaking processes rather than proceeding to resolve Defendants' liability now. Resolving Defendants' liability would likely require, at a minimum, briefing on cross-motions for summary judgment and oral argument before the Court. Plaintiffs anticipate that Defendants may also file a motion to dismiss under Federal Rule of Civil Procedure 12(b). Rather than expending the parties' and the Court's time and resources on briefing and argument of these motions now, the more efficient approach would be to conserve those resources while waiting to determine whether EPA's actions might resolve this litigation entirely without the need for judicial resolution of any of the issues presented.

The duration of the requested stay is also reasonable. Plaintiffs propose to tie the end of this stay period to the completion of EPA's rulemakings on the Proposed OTR Removal and the Proposed SIP Revision because EPA must finalize both rulemakings and publish notices of both

in the Federal Register in order to alter Defendants' obligations under the SIP. EPA has announced that it plans to conclude both rulemakings by the end of 2026. *See supra* n.1. Further, Plaintiffs propose that the parties file their motions to govern further proceedings within 75 days after EPA publishes notice of its final actions on both rulemakings in the Federal Register. Under the CAA, parties must file any petition for review of final agency action within 60 days after such publication. 42 U.S.C. § 7607(b)(1). Thus, Plaintiffs' proposed 75-day period provides the parties with sufficient time to determine whether or not any person will challenge EPA's final actions and to evaluate whether and how any judicial review of those final actions affects the need for further proceedings in this litigation.

Finally, Defendants will not be prejudiced by the requested stay. To the contrary, Defendants would be relieved from their current deadline to file an answer or other responsive pleading and would benefit from the same conservation of resources as Plaintiffs and the Court. When asked for their position on this Motion, Defendants responded that they would not assent to the requested stay because Plaintiffs would not commit to voluntarily dismiss this case as moot at the end of the stay period if EPA finalizes both of its proposals. But Plaintiffs' unwillingness to preemptively agree to dismiss this case at Defendants' request is not "prejudice" to Defendants resulting from a stay. Indeed, Defendants' objection has no relevance to the clear efficiency benefits of Plaintiffs' requested stay or whether good cause otherwise exists to stay this litigation.

In any event, to the extent it is relevant here, it is not hard to see why Plaintiffs need to reserve their ability to seek a further stay of this litigation at the conclusion of this stay even if EPA finalizes the Proposed OTR Removal and the Proposed SIP Revision. One or both of EPA's final actions could be reversed and vacated on judicial review, resulting in the current SIP and its I/M program requirements returning to effect. Similarly, EPA has only proposed to *conditionally*

approve New Hampshire's SIP revision while requiring New Hampshire to make a supplemental submission within one year preserving the I/M program as a contingency measure. If New Hampshire fails to satisfy this condition, EPA's conditional approval will be converted to a disapproval and the current SIP would likewise return to effect. In either scenario, Defendants' failure to implement the I/M program would once again violate New Hampshire's applicable SIP and Plaintiffs would be able to resume this citizen enforcement suit.

**CONCLUSION**

For the foregoing reasons the Court should grant Plaintiffs' motion to stay this case and suspend all currently applicable deadlines pending EPA's final action on the Proposed OTR Removal and Proposed SIP Revision, with the parties' motions to govern further proceedings due within 75 days after notice of both final actions has been published in the Federal Register.

Dated: September 14, 2026

Respectfully submitted,

MARILYN JONAS
GORDON-DARBY HOLDINGS, INC.,

By and through their attorneys,

/s/ *Andrew D. Knudsen*
Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

/s/ *Andrew D. Knudsen*
ANDREW D. KNUDSEN