IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARILYN C. JONAS<br><br>*and*<br><br>GORDON-DARBY HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>KELLY AYOTTE, IN HER OFFICIAL CAPACITY AS THE GOVERNOR OF THE STATE OF NEW HAMPSHIRE,<br><br>*et al.*,<br>Defendants. | Civil No. 26-cv-600-LM-TSM |

**MOTION TO DISMISS AS TO GOVERNOR AYOTTE, THE EXECUTIVE COUNCIL, AND EXECUTIVE COUNCILORS KENNEY, LIOT HILL, STEPHENS, STEPHEN, AND WHEELER WITH ACCOMPANYING MEMORANDUM OF LAW**

NOW COME Defendants, Kelly Ayotte, in her official capacity as the Governor of the State of New Hampshire, the Executive Council of the State of New Hampshire, and its respective members in their official capacities, District 1 Executive Councilor Joseph D. Kenney, District 2 Executive Councilor Karen Liot Hill, District 3 Executive Councilor Janet Stevens, District 4 Executive Councilor John Stephen, and District 5 Executive Councilor David K. Wheeler (together the "Governor and Council Defendants"), and submit this Motion to Dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) and accompanying memorandum of law.

**INTRODUCTION**

2025 N.H. Laws Ch. 141, §§244-256 ("HB2") eliminated the State's vehicle emissions and inspection and maintenance ("I/M") program contained in the State's current federally

approved and effective Clean Air Act ("CAA") State Implementation Plan ("SIP") and repealed the respective New Hampshire Department of Safety ("NHDOS") and New Hampshire Department of Environmental Services ("NHDES") statutory authorities to implement and enforce the I/M program effective January 31, 2026. A NHDES petition to remove the I/M program from the SIP as unnecessary based on air quality improvements was submitted to the Environmental Protection Agency ("EPA") on December 24, 2025 and remains pending.[1] Plaintiffs Marilyn C. Jonas ("Jonas") and Gordon-Darby Holdings, Inc. ("Gordon-Darby"), filed this action on July 22, 2026, seeking relief under the CAA citizen suit provisions and Federal Declaratory Judgment Act to "compel New Hampshire state officials to comply with" the CAA. ECF-1 at 3. Plaintiffs also seek a declaratory judgment that HB2 conflicts with the State's EPA-approved SIP and is therefore preempted under the Supremacy Clause and also that Defendants are in violation of emission standards or limitations within the meaning of 42 U.S.C. §7604(a)(l) and (f), together with an award of their costs, including attorney and expert witness fees, and the imposition of civil penalties pursuant to 42 U.S.C. §7604(a). For the reasons set forth herein, Plaintiffs' claims against the Governor and Council Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing and as barred under the Eleventh Amendment, and 12(b)(6) for failure to state a claim upon which relief can be granted in a citizen suit.

## BACKGROUND

This Court's familiarity with the background of this matter, and prior and related proceedings, is assumed. *See Gordon-Darby Holdings, Inc. v. NH. Dep't of Safety*, 817 F. Supp.

---

[1] On August 11, 2026, EPA issued a notice of proposed rulemaking proposing to conditionally approve the State's SIP amendment and to remove New Hampshire from the so-called Ozone Transport Region. 91 Fed. Reg. 51644 (Aug. 11, 2026) ("Proposed OTR Removal"); 91 Fed. Reg. 51640 (Aug. 11, 2026) ("Proposed SIP Revision"). The public comment period on the proposed rulemaking is open through September 25, 2026.

3d 82, 90 (D. N.H. 2026), *Gordon-Darby Holdings, Inc. v. NH Dep't of Safety*, 821 F. Supp. 3d 202, (D. N.H. Feb. 25, 2026), *Gordon-Darby Holdings v. NH Dep't of Safety*, 2026 U.S. Dist. LEXIS 95919 (Apr. 29, 2026), *Gordon-Darby Holdings v. Quinn*, 174 F.4th 255 (1st Cir. Apr. 30, 2026). Issues raised and facts alleged in the complaint which are pertinent herein are set forth below.

As the complaint explains, the New Hampshire General Court enacted HB2, which repealed the statutory authority underlying the I/M program contained in New Hampshire's SIP (effective January 31, 2026) in June of 2025. ECF-1, ¶¶109-111. The complaint nevertheless alleges that the named defendants (collectively referenced therein as the "State Officials") "have violated and are in violation of" the CAA "by failing to implement" the I/M program as required by New Hampshire's SIP (*id.*, ¶2), which, in turn, constitutes a violation of an emission standard or limitation warranting civil penalties along with declaratory and injunctive relief. *Id.*, ¶4 (citing 42 U.S.C. §7604(f)(3)). Plaintiffs allege that "[t]his decision to cease complying with the I/M requirements of New Hampshire's federally approved SIP, prior to approval of a revised SIP by EPA, is in direct violation of the State's obligations under federal law." *Id.*, ¶134.

More specifically, according to the complaint, the "emission standards or limitations" (*id.*, ¶147 (citing 42 U.S.C. § 7604(a)(l) and (f))) that Plaintiffs allege are being violated require <u>all</u> of the named "State Officials" to:

1) "[R]etain the services of a 'supplier' as provided for in New Hampshire's SIP to serve as the contracted vendor" for the I/M program. *Id.*, ¶143 (citing N.H. Admin. Code Saf-C 3202.24, 3209.0l(d), 3209.03(e), 3209.04(a), 3209.08(d), 3209.09(d));

2) "[I]ssue certificates of appointment to qualifying inspection stations. *Id.*, ¶144 (citing N.H. Admin. Code Saf-C 3205.01-3205.06);

3) "[I]ssue mechanic approval cards to qualifying mechanics. *Id.*, ¶145 (citing N.H. Admin. Code Saf-C 3205.10), and;

4) "[P]rovide counter service for inspection sticker purchases and returns." *Id.*, ¶146, (citing N.H. Admin. Code Saf-C 3209.02(a).

The complaint does not allege any other violation of an identified State law or rule. *See id.* at ¶¶100, 103-106, 119 (alleging violation of regulatory requirements without citations).

Gordon-Darby is alleged to have "suffered harm from the State Officials' suspension of the I/M program and termination of Gordon-Darby NHOST's contract as the I/M program vendor." ECF-1, ¶46. Plaintiffs contend that such harm would be redressed if "this Court were to order the State Officials to implement the I/M program as codified in New Hampshire's SIP" because "the State Officials would need to retain a new vendor to administer the I/M program" (*id.*, ¶47) and Gordon-Darby would "have the opportunity to bid for that new vendor contract." *Id.*, ¶48.

Marilyn Jonas is alleged to have been harmed by negative impacts from alleged "changes in New Hampshire's air quality, including by the additional vehicle emissions and higher ozone concentrations resulting from the State Officials' suspension of the I/M program." *Id.*, ¶33. According to the complaint, such negative impacts to Ms. Jonas's health "would be reduced if the I/M program were resumed because the emission reductions associated with that program would be restored." *Id.*, ¶35. Ms. Jonas also alleges experiencing anxiety about the public safety risks from unsafe vehicles operating on New Hampshire's roads, which would also allegedly be reduced if the I/M program were to be resumed. *Id.* ¶¶40-41.

As to the respective responsibilities and authority of the Governor and Executive Council, the complaint alleges that both defendants possess and are charged with "authority and responsibility. . . over the administration of the affairs of the State" and also that approval of the Governor and Executive Council is required for "any contracts associated with implementing and

enforcing the I/M obligations set forth in the New Hampshire SIP." *Id.*, ¶¶52, 56. The complaint additionally alleges that each individual Executive Councilor has the same authority and responsibility. *Id.*, ¶¶57-61. The complaint makes no express allegation that the Governor and Council Defendants are responsible for implementing and enforcing any part of the I/M obligations set forth in the SIP.

**STANDARD OF REVIEW**

A rule 12(b)(1) facial challenge to a complaint based on standing requires a District Court to determine the legal sufficiency of the complaint as a matter of law (*Wilson v. HSBC Mortg. Servs., Inc.,* 744 F.3d 1, 8 (1st Cir. 2014)), taking all facts alleged as true. *Valentín v. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (distinguishing facial and factual standing challenges). When evaluating a complaint under Rule 12(b)(1), courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6) . . ." *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 371 (1st Cir., 2023) (citations omitted).

When deciding whether a complaint can survive a Rule 12(b)(6) motion, District Courts accept all well-pleaded facts as true and indulge all reasonable inferences in favor of the plaintiff. *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 123 (1st Cir. 2025) (citations omitted). Courts must also identify and disregard allegations which are legal conclusions or mere recitals of the elements of a cause of action. *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citations omitted). The question is whether the facts alleged "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted).

## ARGUMENT

**I. The Claims Against the Governor and Council Defendants Should be Dismissed Pursuant to Rule 12(b)(1) Because Plaintiffs Do Not and Cannot Allege that Such Defendants Violated the Clean Air Act.**

A. The Constitutional Minimum for Citizen Suit Standing

Federal District Courts are required to resolve a Rule 12(b)(1) challenge to their Article III subject matter jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998); *Seafreeze Shoreside v. United States DOI*, 123 F.4th 1, 15 (1st Cir. 2024); *McBreairty v. Miller*, 93 F.4th 513, 517 (1st Cir. 2024) (quoting *Steel Co.*, 523 U.S. at 95). If the plaintiff fails at the pleading stage to allege facts demonstrating each element of standing, "there is no case or controversy for the federal court to resolve." *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

Article III, §2 of the United States Constitution limits federal court jurisdiction to cases and controversies where a plaintiff has standing to challenge the alleged misconduct of the defendant(s). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This limitation is "fundamental to the judiciary's proper role in our system of government." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (citations omitted).

Standing requires a plaintiff to show that he or she has suffered, or imminently will suffer, (1) a concrete and particularized "injury in fact" (2) that is fairly traceable to the challenged action of the defendant, and which is (3) likely to be redressed by judicial relief. *Lujan*, 504 U.S. at 560–61. Demonstrating injury-in-fact, causation, and redressability is not a pleading requirement but is "an indispensable part of the plaintiff's case." *Dantzler*, 958 F.3d at

47 (quoting *Lujan*, 504 U.S. at 561); *see also Wiener*, 86 F.4th at 84. Whether certain facts establish standing must be resolved as "a question of law." *Wilson*, 744 F.3d at 8.

B. The Complaint Does Not Allege Any Injury-in-Fact to Any Legally Protected Interest of Either Plaintiff Connected to a Violation of An Emission Standard or SIP Requirement by the Governor and Council Defendants.

An "injury-in-fact," for standing purposes, requires "an invasion of a legally protected interest . . ." *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 55 (1st Cir. 1998). A CAA citizen suit plaintiff thus must claim an Article III injury "in connection with the alleged CAA violation." *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 83 (1st Cir. 2025). District courts cannot entertain CAA citizen suits which do not "involve the enforcement of standards set out" in the CAA or an approved SIP. *Conservation Law Found. v. Federal Highway Admin.*, 24 F.3d 1465, 1477 (1st Cir. 1994). But absent an Article III injury, a plaintiff cannot maintain a CAA citizen suit "even in the context of a statutory violation." *Conserv. Law Found*, 129 F.4th at 83 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

i. *Neither Plaintiff Alleges Injuries Connected to Any Violation of an Emission Limitation or SIP Requirement by the Governor and Council Defendants.*

The "linchpin" of citizen suit jurisdiction is whether the plaintiff claims "violations of specific provisions of the act or specific provisions of an applicable implementation plan…" *Conservation Law Found. v. Busey*, 79 F.3d 1250, 1258 (1st Cir. 1996) (quoting *Wilder v. Thomas*, 854 F.2d 605, 613 (2d Cir. 1988)). Here, Plaintiffs do not (and cannot) allege any Article III injury to themselves which is connected to any alleged CAA violation by the Governor and Council Defendants. *See Conservation Law Found.*, 129 F.4th at 83. Plaintiffs thus fail to allege any cognizable injury-in-fact caused by these defendants as required for Article III standing. *See Lujan*, 504 U.S. at 560. Absent such allegations, the complaint must be dismissed. *See Bingham v. Massachusetts*, 616 F.3d 1, 5 (1st Cir. 2018).

The complaint alleges that the Governor and Council Defendants have authority over the administration of State affairs, including the approval of "any contracts associated with implementing and enforcing the I/M obligations set forth in the New Hampshire SIP," (ECF-1, ¶¶ 52, 56-61) and that the Governor and Council Defendants denied NHDOS's request to extend the termination date for Gordon-Darby NHOST's contract. ECF-1, ¶ 124. Yet, the complaint makes no allegation that the Governor and Council Defendants have any authority over, or took any action or omission in violation of, the CAA or the SIP. Indeed, the denial of NHDOS's request to extend the termination date for Gordon-Darby NHOST's contract was not a violation of any emission limit or SIP requirement, and the complaint does not assert otherwise. Rather, the denial was an exercise of the Governor and Executive Council's sovereign procurement power, and the CAA does not (and cannot) regulate sovereign State procurement actions taken under State law (RSA 4:15). *See* U.S. Const. amend. X (discussed below).

Thus, the complaint does not set forth any legally cognizable injury-in-fact to Plaintiffs caused by the Governor and Council Defendants because it lacks any allegations that those defendants violated an emission standard or limitation. The complaint as a result neither connects Plaintiffs' alleged injuries to any action or inaction of the Governor and Council Defendants nor alleges the redressability of such injuries and thus does not plausibly allege standing in any respect. *See Donahue v. City of Boston*, 304 F.3d 110, 118 (1st Cir. 2002).

ii. *Plaintiffs' Claims Against State Defendants for their Action or Inaction in their Capacity as Regulators Are Not Legally Cognizable Citizen Suit Claims.*

While not ascribing any SIP or NHDOS regulatory duties to the Governor and Council Defendants, the complaint nevertheless asserts that all defendants violated the CAA by failing to implement deauthorized and repealed NHDOS rules and thus attempts to treat the Governor and Council Defendants as regulators. ECF-1, ¶¶143-146. But, as the First Circuit Court of Appeals

recently observed in direct response to the State's previous arguments to the contrary in *Gordon-Darby Holdings, Inc. v. Quinn*, "one circuit has held that 'the text and structure of the CAA make plain that [§7604(a)(1)] does not permit citizen suits against regulators *qua* regulators.'" *Gordon-Darby*, 174 F.4th at 262 (quoting *Sierra Club v. Korleski*, 681 F.3d 342, 351 (6th Cir. 2012)) (emphasis original).

*Korleski* involved the State of Ohio's legislation allowing the Ohio EPA to issue permits to small stationary emitting sources without a determination that such sources will use best available control technologies, contrary to Ohio's SIP requirements. *Korleski*, 681 F.3d at 344. There, the Sixth Circuit observed that such a regulatory decision to cease enforcing the CAA amounts to a failure to implement or a "deficiency" rather than a "violation" of an emission standard or limitation under the CAA for which a CAA citizen suit may be brought. *Id*. at 344; 348-53. The Sixth Circuit reasoned that this interpretation better comports with the cooperative federalism principles underlying the CAAs' detailed sanctions regime and sanctions clock enacted to "coax" states into compliance, and Supreme Court precedent interpreting nearly identical statutes. *Id*. at 349. Plaintiffs' claims against the State defendants (such as they are) in their regulatory capacity are likewise "profoundly contrary to the Act's remedial design." *Id*. at 352.[2]

HB2's repeal of authority to implement and enforce the I/M program is the linchpin of Plaintiffs' entire complaint. As discussed, every one of Plaintiffs' allegations that the State

---

[2] *Compare Am. Lung Ass'n v. EPA*, 985 F.3d 914, 931 (D.C. Cir. 2021) (citing 42 U.S.C. §7411(d)(2)(A) (permitting EPA to prescribe a SIP for a State); *see also* §7411(d)(2)(B) (EPA may enforce a State's SIP), §7413 (EPA may enforce against a State for failing to enforce its SIP); § 7410(k)(5), 7410(m) (EPA must provide schedule for State compliance pending the imposition of a federal "FIP") and §7509(a) and (b) (withholding of grants and imposition of sanctions for a State's failure to enforce its SIP).

defendants violated the CAA by acting (or refusing to act) with respect to the I/M program is rooted in HB2's repeal of the State defendants' authority to implement the I/M program.

While *Korleski* addressed the State of Ohio's regulation of permitted stationary sources (smokestacks) rather than an I/M program, *Korleski* is also consistent with the principle that citizen suits only permit private parties to enforce pollution control standards against polluters. *See NRDC v. EPA*, 484 F.2d 1331, 1337 (1st Cir. 1973). Plaintiffs' claims are premised on HB2's repeal of the I/M program and not upon any alleged violation of any emissions standard or SIP requirement by the State defendants themselves as polluters and thus fail to allege injury in fact to any interest legally protected by the CAA. *See Conserv. Law Found. V. FHA,* 24 F.3d at 1477; *Conserv. Law Found. v. Acad. Express, LLC*, 129 F.4th at 83.

iii. *Gordon-Darby's Alleged Private Economic Injuries Are Likewise Not Legally Protected by the CAA.*

CAA citizen suits permit private parties to enforce pollution control standards as private attorneys general. *NRDC v. EPA*, 484 F.2d at 1337. When deciding the viability of a citizen suit, this Court must strictly adhere to the statutory provisions conferring authority upon private citizens to enforce federal pollution control standards. *Garcia v. Cecos Int'l*, 761 F.2d 76, 81 (1st Cir. 1985). Additional judicial remedies to redress private harm are not authorized by citizen suits. *Middlesex Cty. Sewerage Ass'n v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14, 16–18 (1981).

The complaint alleges Gordon-Darby "suffered harm" from the termination of its subsidiary's contract to perform outsourced work of State government as part of the former I/M program, and from the loss of an opportunity to bid on a potential future vendor contract. ECF-1, ¶¶ 46, 49. Yet, neither alleged injury is legally protected under the CAA, and thus cannot establish a cognizable "injury-in-fact" sufficient to establish Article III standing. *See Lujan*, 504

U.S. at 560 (confirming that "injury in fact" must arise from "an invasion of a legally protected interest").

First, neither the CAA nor the SIP guarantees a contractual right for Gordon-Darby NHOST to be retained to perform services in connection with an I/M program. The SIP contains no requirement for an I/M vendor, let alone a requirement to retain Gordon-Darby NHOST. While Gordon-Darby cites to now unauthorized and unenforceable NHDOS rules that reference a "supplier," defined as "the contracted vendor for the department's automated safety and emissions inspection program," (ECF-1, ¶143 (citing N.H. Admin Code Saf-C 3202.24, 3209.01(d), 3209.03(e), 3209.04(a), 3209.08(d), and 3209.09(d)), none of these rules require (or ever required) NHDOS to retain a third-party vendor, let alone to retain Gordon-Darby NHOST. Indeed, N.H. Admin. Code Saf-C 3202.24 is simply a definition, and the other cited former rules merely relate to ministerial matters regarding inspection stickers. *Id.* In the absence of a requirement to retain a vendor, there cannot be any legally protected interest in the opportunity to bid on a vendor contract.

Second, Gordon-Darby NHOST's contract with the State was expressly terminable for convenience. *See* ECF-1 at PDF p. 53. Having bargained away any right to oppose termination of the contract after 30 days written notice (*id.*), Gordon-Darby NHOST cannot now assert an injury from NHDOS's exercise of its termination rights. As such, Gordon-Darby has no legally protected interest in continued or future contractual rights under the contract, the SIP or the CAA.

Third, Gordon Darby is a corporation which does not (and cannot) base its standing on a legally cognizable right to compliance with National Ambient Air Quality Standards (NAAQS). *See Conservation Law Found.*, 129 F.4th at 88. Gordon Darby's alleged commercial harm (if

harm it is, since the contract was terminable for convenience) is purely private. Congress did not authorize additional judicial remedies for private harm when it authorized citizen suits. *Sea Clammers Ass'n*, 453 U.S. at 14, 16–18. Gordon Darby's purely private (and bargained for) commercial harm is not legally cognizable injury in fact for the purposes of a CAA citizen suit. *See Lujan*, 504 U.S. at 560.

iv. *Ms. Jonas' Alleged Safety-Related Injuries are Also Not Injuries to Interests Legally Protected Under the CAA.*

Among other alleged injuries, Ms. Jonas alleges she will be injured by the termination of the safety inspection portion of the former I/M program. ECF-1, ¶¶38-41. However, vehicle safety inspections (separate from emissions inspections) are not required or regulated under the CAA, are categorically not connected to any violation of the CAA, and were never incorporated into the SIP. The complaint does not allege otherwise. Accordingly, these alleged injuries do not establish a cognizable "injury-in-fact" in a CAA citizen suit.

C. <u>Plaintiffs Do Not Allege Any Injury Fairly Traceable to a Violation of the CAA or Any SIP Requirement by the Governor and Council Defendants.</u>

The "traceability" component of standing requires a sufficiently direct causal connection between the challenged action and identified harm which must not be overly attenuated. *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). "Traceability" therefore requires that the injury is (or will be) suffered "as a consequence" of the defendants' alleged unlawful conduct. *Johnson v. United States OPM*, 783 F.3d 655, 660-61 (1st Cir. 2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 485 (1982)). The complaint, as noted, contains no such allegations with respect to the Governor and Council Defendants. The complaint instead insufficiently alleges injuries resulting from the "independent action of some other party not before the court" resulting from the General Court's

repeal of the I/M program which are not fairly traceable to any named Defendants. *See Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020) (quoting *Lujan*, 504 U.S. at 560—561). Thus, even if the complaint alleged injury-in-fact (which it does not), the complaint does not (and cannot) allege any injury from any CAA violation fairly traceable to the Governor and Council Defendants. *See id.*

While Plaintiffs broadly allege that all State defendants have violated the CAA by not implementing certain requirements of now unauthorized and unenforceable NHDOS rules incorporated into the SIP (ECF-1, ¶¶142-46), Plaintiffs nowhere allege that the Governor and Council Defendants had any responsibility or authority to implement the I/M program or the cited NHDOS rules. This omission reflects the reality that the Governor and Council Defendants have no such role or authority.[3]

Indeed, Plaintiffs' alleged harm emanates from the repeal of the State laws authorizing the I/M program and not from the violation of any emission standard or SIP requirement by the Governor and Council Defendants.[4] As a result, the complaint does not allege or support any inference that Plaintiffs' respective harms were sustained "as a consequence" of any unlawful conduct of the Governor and Council Defendants, as required to establish standing. *See Johnson*, 783 F.3d at 660-61. Where, as here, "the absence of causation and a relevant injury-in-fact are presented with such clarity," dismissal for lack of subject-matter jurisdiction is justified. *Donahue,* 304 F.3d at 119 (citing *Steel Co.*, 523 U.S. at 89).

---

[3] The NHDOS Commissioner (and not the Governor and/or Executive Council) is charged with administration and enforcement "of the laws with which the commissioner or the department is charged" and the adoption of NHDOS rules. RSA 21-G:9, I, II(b).

[4] The outsourcing of and procurement of privatized State regulatory functions is a component of State sovereignty and is not regulated by the CAA.

D. Plaintiffs' Claims Against the Governor and Council Defendants Are Not Redressable Through a CAA Citizen Suit.

The redressability facet of standing overlaps with the traceability factor to constitute a singular causation requirement. *Sea Shore Corp.*, 158 F.3d at 56. Redressability addresses whether there is a connection between the plaintiff's injury and the judicial relief sought. *Allen v. Wright*, 468 U.S. 737, 753, n. 19 (1984). A plaintiff alleges such a connection by showing that favorable resolution of the asserted claim(s) would likely redress the alleged injury. *Webb*, 72 F.4th at 378; *Dantzler*, 958 F.3d at 47 (quoting *Katz*, 672 F.3d at 72). Mere speculation that this may occur does not suffice. *Lyman*, 954 F.3d at 361.

Here, any "decision to cease complying with the I/M requirements of New Hampshire's federally approved SIP, prior to approval of a revised SIP by EPA" (ECF-1, ¶ 134) of which Plaintiffs complain was not a decision of the Governor and Council Defendants. The Governor and Council Defendants did not repeal (and cannot reenact) the State law authority for mandated annual vehicle inspections (former RSA 266:1), police enforcement thereof (former RSA 266:5), or required testing and visual inspection of emissions-related equipment. RSA 266:59-b (repealed effective September 30, 2026). Nor would the Governor and Executive Council's consideration or approval of an I/M vendor contract reenact the State law authority for NHDES and NHDOS to implement and enforce the I/M program.[5]

Part II, Article 62 of the New Hampshire Constitution authorizes the Executive Council to direct matters of State "according to the law of the land." *See Opinion of Justices*, 116 N.H. 406, 412 (1976). New Hampshire law is clear. HB2 repealed the statutory authority underlying the I/M program effective January 31, 2026. ECF-1, ¶¶ 109-111. The SIP itself is not an

[5] As the complaint details, the vehicle inspection program was suspended effective February 13, 2026. ECF-1, ¶ 129

organic source of state authority. State I/M program rules implementing the authorizing statutes (but not the statutes themselves) are incorporated into and enforceable under the SIP, but such rules do not authorize inspections or allow enforcement of noncompliance. *See* 40 C.F.R. §52.1520(c)–(d) (citing to 89 Fed. Reg. 33232). Accordingly, the Governor and Council Defendants lack any legal authority to restore the I/M program and thereby redress Plaintiffs' alleged harms.

Plaintiffs' prayer for injunctive relief mandating State actors to implement and enforce repealed State laws can thus only be understood as mistakenly dependent upon the requested declaratory judgment that HB2 is preempted "to the extent it conflicts" with the CAA pursuant to the Supremacy Clause. ECF-1 at 27.[6] This request for declaratory judgment and consequential injunctive relief apparently misunderstands conflict preemption as well as the wording, structure and purpose of the CAA, and furthermore disregards the Tenth Amendment limits of this Court's authority to mandate State action.

First, the CAA does not provide for express or implied preemption of state laws. Courts look to the wording, structure and purpose of a federal statute to determine whether "the entire scheme of the statute" expresses or evinces Congressional intent to preempt state law. *Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Hernández*, 58 F.4th 5, 11 (1st Cir. 2023). If the purpose of federal law cannot otherwise be accomplished, state law may be preempted. *Id.*

[6] The Declaratory Judgment Act "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. at 672. A case or controversy is required for the Court to act. 28 U.S.C. § 2201. "The "actual controversy" required by 28 U.S.C. § 2201(a) "is identical to the meaning of 'case or controversy' for the purposes of Article III." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003), citing *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). The complaint thus fails to allege standing under either the CAA or the Federal Declaratory Judgment Act.

The CAA is worded and structured, however, to achieve the national goal of protecting and enhancing air quality (42 U.S.C. § 7401(b)(1)) with or without state involvement.

The national interest in air quality is ensured through the numerous mechanisms of the CAA's cooperative federalism framework, which prevents state law from obstructing or frustrating the CAA's purposes, "under which the federal government develops baseline standards that the states individually implement and enforce." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190 (3rd Cir. 2013). If a state fails to submit a satisfactory SIP, the EPA may prescribe a SIP for that State. *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 931 (D.C. Cir. 2021) (citing 42 U.S.C. §7411(d)(2)(A)). Similarly, if a state fails to enforce its SIP, "the EPA itself may enforce the plan's terms." *Id.* (citing §7411(d)(2)(B)). The CAA also includes additional remedies to address a state's failure to enforce its own SIP. *See, e.g.*, 42 U.S.C. §§7413 (EPA enforcement); 7410(k)(5), 7410(m) (compliance schedule pending imposition of a federal SIP or "FIP"); 7509(a) (withholding grants), 7509(b) (sanctions).[7] The plethora of statutory backstops illustrate that HB2 cannot obstruct or frustrate the purposes of the CAA and therefore HB2 is not impliedly preempted by federal law.

Second, the federal government cannot commandeer State resources to implement, administer, and enforce an I/M program because the Tenth Amendment prohibits federal commandeering of state sovereignty by compelling the administration of a federal regulatory program. *Printz v. United States*, 521 U.S. 898, 933 (1997).

[7] The CAA requires an implementing State to provide "necessary assurances" of "adequate personnel, funding, and authority" for the State to implement and enforce its SIP 42 U.S.C. §7410(a)(2)(E). If the CAA simply preempted all state laws and was directly enforceable by federal court mandate, there would have been no need for the State to assure authority to implement the SIP or for Congress to provide EPA with the authority to compel a State to comply with its SIP (including through an enforcement action), directly implement a SIP, mandate a "FIP," or impose a monetary fine for continued non-compliance.

State laws that prohibit or abrogate the implementation authority for an I/M program cannot in any event "conflict" with federal law because federal law cannot "impair essential attributes of state sovereignty." *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 533 F. Supp. 869, 878–879 (E.D. Pa. 1982). Congress cannot require a state to "pass legislation establishing a regulatory program to enforce the Clean Air Act." *Id.* (citing *National League of Cities v. Usery*, 426 U.S. 833 (1976)). This Court is similarly without authority to either mandate sovereign procurement determinations of the Governor and Counsel Defendants or to declare that past actions taken by such defendants under RSA 4:15 violated federal law.[8] 42 U.S.C. 7604(a)(1); U.S. Const. amend. X.

Relief which is incapable of remedying the injury suffered "cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107. CAA citizen suit redress for Plaintiffs' claims against the Governor and Council Defendants is not merely unlikely herein; it is an impossibility. Plaintiffs seek relief which is beyond this Court's statutory and constitutional authority to grant. By failing to plausibly allege a redressable CAA violation by the Governor and Council Defendants, Plaintiffs impermissibly seek an unconstitutional order for the admittedly unauthorized implementation, administration, maintenance, and enforcement of the I/M program.

For the reasons discussed above, this Court lacks both a statutory basis under the facts alleged and the constitutional authority to find that the Governor and Council Defendants violated the CAA or to mandate such defendants to act in any fashion or indeed at all with

---

[8] RSA 4:15 pertinently provides that the expenditure "of any moneys appropriated or otherwise provided to carry on the work of any department of the state government …" requires the Governor's approval, with the advice of the Executive Council. RSA 4:15. This sovereign procurement power is reserved exclusively to the State and is not regulated in any form under the CAA.

respect to an I/M vendor contract pursuant to RSA 4:15. As a result, the injuries which Plaintiffs attribute (without ever connecting) to the Governor and Council Defendants are not redressable by this Court.

## II. Plaintiffs' Claims Against the Governor and Council Defendants Are Also Barred by the Eleventh Amendment.

### A. The Eleventh Amendment Bars Any Claims Against the Governor and Executive Council.

The Eleventh Amendment bars citizens from suing a state in federal court. U.S. Const. amend. XI; *see also Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). "This immunity extends to any entity that is an 'arm of the state.'" *Id*. (quoting *In re San Juan Dupond Plaza Hotel Fire Litig.*, 888 F.2d 940, 942 (1st Cir. 1989)). Moreover, the "'Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies…'" *Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011) (quoting *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000)) (emphasis added). The State of New Hampshire has not waived its sovereign immunity and the United States Congress has not abrogated such immunity via the Clean Air Act.[9]

The New Hampshire Executive Council is a body established by the New Hampshire Constitution for the purpose of "ordering and directing the affairs of the state, according to the laws of the land." N.H. CONST. pt. II, art. 62. Indeed, the "panoply of powers granted to the Governor and Council by the Constitution and statutes of [New Hampshire] is extensive. *Barry v. King*, 106 N.H. 279, 281 (1965). The Governor and Council oversee executive branch agency

[9] *See Paisley v. Brewer*, 2010 U.S. Dist. LEXIS 152775, at *6-7 (Az. Dist. Ct. 2010) (Through the Clean Air Act, "Congress thus grants a right to sue within the limits of the Eleventh Amendment, rather than requiring states to waive the protection of that amendment.") (dismissing the named State of Arizona and State of Arizona Department of Environmental Quality).

expenditures (RSA 4:15), have investigatory powers over the methods of business of the various departments and the authority to order action be taken to "bring about increased economy and efficiency in the conduct of the affairs of the state" (RSA 9:12), oversee the State's acquisition and disposal of real estate (RSA 4:29-4:30-a; RSA 4:40), have the authority to nominate and appoint the State's judicial officers, the attorney general and other State officials (N.H. CONST. pt. II, art. 46), among other powers related to New Hampshire's governance. As such, it is undisputed that the named Executive Council is an extension of the State itself and any claim against it is barred by the Eleventh Amendment. Accordingly, the Court should dismiss all claims against the Executive Council.

B. <u>Plaintiffs' Claims Against the Governor and Council Defendants for Injunctive Relief Are Also Barred by the Eleventh Amendment and Not Subject to the *Ex Parte Young* Exception.</u>

The CAA permits citizen suits against any person or governmental instrumentality or agency to the extent permitted by the Eleventh Amendment. 42 U.S.C. § 7604(a). In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court established an exception to the Eleventh Amendment bar on suits in federal court against state officials permitting "a federal court to prohibit a state official from enforcing state law in a way that violates federal law." *Cotto v. Campbell*, 126 F.4th 761, 767 (1st Cir. 2025) (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974)).

Plaintiffs accordingly must "allege[] an ongoing violation of federal law' by a state official in order to qualify for the *Ex parte Young* exception. . .'" (*Cotto*, 126 F.4th at 768) and the question is whether the relief sought directly serves to "bring an end to a present violation of federal law." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (citations omitted). Even then, the *Ex parte Young* exception only applies "where the state official sued

has authority to grant the relief sought." *Cotto*, 126 F.4th at 773 (citing *Doe v. Shibinette*, 16 F.4th 894, 904-905 (1st Cir. 2021)). For the reasons previously discussed, Plaintiffs' claims against the Governor and Council Defendants fail to meet either requirement and are therefore barred by the Eleventh Amendment.

First, as discussed, the complaint does not plausibly allege any ongoing violation of an emission standard or SIP requirement (or any law) by the Governor and Council Defendants, or even that RSA 4:15 is an emission standard or SIP requirement. Even if the Governor and Executive Council were to consider and approve an I/M vendor contract, doing so would not directly (or even indirectly) reenact the statutory authority for the I/M program's existence, implementation, or enforcement and thereby "bring an end to [the] present violation of federal law" of which Plaintiffs complain. *Town of Barnstable*, 786 F.3d at 138. Plaintiffs therefore do not qualify for the *Ex parte Young* exception. *Id.; see also Cotto*, 126 F.4th at 768.

Second, the problem for Plaintiffs is not, as they allege, that "the State no longer ha[s] an approved vendor to administer its I/M program as required by the SIP." ECF-1, ¶ 128. The problem for Plaintiffs is that HB2 repealed the State law authority to implement, administer or enforce the entire I/M program in the first place. Plaintiffs must allege that the Governor and Council Defendants have the authority to grant the relief which Plaintiffs seek. *Cotto*, 126 F.4th at 773. The complaint alleges the opposite by acknowledging that HB2 repealed the statutory authority underlying the I/M program effective January 31, 2026. ECF-1, ¶¶ 109-111.

The authority to enact and repeal laws is vested in the General Court by Part II, article 5 of New Hampshire's Constitution. As discussed, the Governor and the Executive Council did not repeal (and cannot reenact) the State law authority for mandated annual vehicle inspections (former RSA 266:1), police enforcement (former RSA 266:5), and OBD II testing with a visual

inspection of specified emissions-related equipment. RSA 266:59-b (repealed effective September 30, 2026).[10] The complaint does not (and cannot) allege otherwise.

The Governor and Council Defendants direct matters of State "according to the law of the land" pursuant to Part II, Article 62 of the New Hampshire Constitution. New Hampshire law is clear. HB2 repealed the statutory authority underlying the I/M program effective January 31, 2026. ECF-1, ¶¶ 109-111. Plaintiffs' claims for injunctive relief against the Governor and Council Defendants regarding any future exercise of their procurement authority under RSA 4:15 are consequently barred by the Eleventh Amendment. *Cotto*, 126 F.4th at 773.

C. <u>Plaintiffs' Retrospective Claims for Civil Penalties and Declaratory Judgment are Also Barred by the Eleventh Amendment.</u>

In addition to prospective injunctive relief, Plaintiffs seek civil penalties and a declaratory judgment that Defendants "have violated" the CAA. ECF-1, at Prayer (4) and (1). As discussed, the CAA permits citizens to bring an action against a state "to the extent permitted by the Eleventh Amendment . . . ." 42 U.S.C. § 7604(a). Plaintiffs' requested retrospective relief is, however, barred by the Eleventh Amendment and the doctrine of *Ex parte Young*. While the established *Ex parte Young* doctrine provides an exception to the Eleventh Amendment's prohibition on *who* may be sued, "the exception memorialized in <u>Ex parte Young</u>, in turn, itself has exceptions," which limits *what* relief a plaintiff may seek against such state official defendants. *Town of Barnstable*, 786 F.3d at 138.

"The Constitution does not permit relief that 'would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of

[10] As previously discussed, Plaintiffs also disregard or overlook the fact that an approved vendor contract for a program which NHDOS lacks the legal authority to implement, administer or enforce would not redress their alleged injuries.

course prohibited by the Eleventh Amendment.'" *Town of Barnstable*, 786 F.3d at 138. (quoting *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997) (other internal citations omitted)). Rather, to fit under the *Ex parte Young* exception and avoid an Eleventh Amendment bar to suit, the Court "'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and *seeks relief properly characterized as prospective*.'" *Id*. at 139 (emphasis added) (internal citations omitted). However, "[r]elief that is 'tantamount to an award of damages for a past violation of federal law, even though styled as something else,' is barred." *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)). "'Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *Papason*, 478 U.S. at 278 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

Plaintiffs' request for civil penalties for pre-judgment past violations of the CAA do not constitute a remedy designed to stop an ongoing violation of federal law but would serve only to punish and deter future violations. *See Green*, 474 U.S. at 68. Such penalties for pre-judgment past violations cannot be properly characterized as prospective. Courts interpreting the identical Clean Water Act's and other environmental statutes' citizen suit provisions have consistently held that civil penalties do not qualify for the *Ex parte Young* exception. *See Conservation Law Found., Inc. v. Pease Dev. Auth.*, 2017 U.S. Dist. LEXIS 157191, at *21 (N.H. Dist. Ct. 2017) (dismissing plaintiff's claims for civil penalties under the Clean Water Act as barred retrospective relief under the Eleventh Amendment); *Murtaugh v. New York*, 810 F. Supp. 2d 446, 470 (N.D.N.Y. 2011) (same); *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 423 (9th Cir. 1996) (holding the Eleventh Amendment barred action against state officer for civil

penalties and declaratory judgment based on the state's violation of the Clean Water Act). The civil penalties sought by Plaintiffs are thus barred by the Eleventh Amendment and should be dismissed.

Similarly, Plaintiffs' request for a declaratory judgment that Defendants "have violated…'emission standards or limitations' within the meaning of 42 U.S.C. § 7604(a)(1) and (f)" serves no prospective relief purpose nor does such a declaratory judgment result in an end to any ongoing violation of federal law as required by the limitation exceptions of the *Ex parte Young* doctrine. ECF-1, at Prayer (1). Thus, Plaintiffs' request for retrospective declaratory relief must also be dismissed as prohibited by the Eleventh Amendment. *See Green*, 474 U.S. at 73-74; *Murtaugh*, 810 F. Supp. 2d at 470 ("The doctrine of *Ex parte Young* 'applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past…and has no application in suits against the States and their agencies, which are barred regardless of the relief sought'" (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

**III. The Complaint Should be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a CAA Citizen Suit Claim Against the Governor and Council Defendants.**

As discussed, the "linchpin" of this Court's jurisdiction under 42 U.S.C. 7604 is whether the complaint alleges "violations of specific provisions of the act or specific provisions of an applicable implementation plan…" *Conserv. Law Found. v. Busey*, 79 F.3d at 1258. That linchpin, also essential for Plaintiffs' standing, is conspicuously absent from the complaint with respect to the Governor and Council Defendants, as previously discussed herein. In particular, the absence of any allegations that the Governor and Council Defendants themselves (as opposed to the broader catchall of "State Officials") engaged in any conduct in violation of any emission standard or

limitation or requirement of the SIP mandates dismissal of the Governor and Council Defendants for failure to state a claim.

Simply put, the Governor and Council Defendants do not implement or enforce the I/M program, do not implement or enforce NHDOS administrative rules, and are not alleged to have engaged in any unlawful act under the SIP, the CAA, or any law. Accordingly, there is no plausibly alleged basis for their continued retention as Defendants in this case and the claims against them should be dismissed as a result. Moreover, as set forth above, to the extent Plaintiffs raise claims against the Governor and Council Defendants as "regulators *qua* regulators" fails to assert a permissible citizen suit claim under the CAA. *See* Section I.B.ii, *supra* (citing *Korleski*, 681 F.3d at 344; 348-53). Accordingly, the complaint fails to state claims upon which relief can be granted under the CAA and the claims against the Governor and Council Defendants should be dismissed.

**CONCLUSION**

In the absence of any allegation of a violation of any specific emission standard or limitation or any specific provisions of the SIP, every successive domino in the Plaintiffs case against the Governor and Council Defendants falls in a circular pattern, from injury in fact, traceability, and redressability, to the failure to state a claim under the CAA, to the final constitutional dominos. The Tenth Amendment prohibits the federal government from compelling State officials to administer a federal regulatory program. The Eleventh Amendment limits this Court to the provision of prospective relief against State officials which both prohibits such officials from enforcing state law in a way that violates federal law and directly serves to bring an end to the violation(s). For the reasons set forth herein, the Governor and Council Defendants respectfully request that this Court dismiss Plaintiffs' claims against them and grant to them such other and further relief as to the Court may seem just, proper and equitable.

Respectfully submitted,
KELLY AYOTTE, in her capacity as the Governor of the State of New Hampshire,
THE EXECUTIVE COUNCIL OF THE STATE OF NEW HAMPSHIRE, and its respective members in their official capacities,
DISTRICT 1 EXECUTIVE COUNCILOR JOSEPH D. KENNEY,
DISTRICT 2 EXECUTIVE COUNCILOR KAREN LIOT HILL,
DISTRICT 3 EXECUTIVE COUNCILOR JANET STEVENS,
DISTRICT 4 EXECUTIVE COUNCILOR JOHN STEPHEN,
DISTRICT 5 EXECUTIVE COUNCILOR DAVID K. WHEELER,

By and through their counsel
JOHN M. FORMELLA
ATTORNEY GENERAL

September 21, 2026

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692
Assistant Attorney General
Joshua C. Harrison, Bar #269564
Senior Assistant Attorney General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692