**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| MARILYN C. JONAS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>KELLY AYOTTE, in her official capacity as Governor of the State of New Hampshire, et al.,<br><br>*Defendants*. | Civil Action No. 26-cv-00600-LM-TSM |

**PLAINTIFFS' OBJECTION TO AGENCY DEFENDANTS' MOTION TO DISMISS**

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com

*Counsel for Plaintiffs Marilyn C. Jonas and Gordon-Darby Holdings, Inc.*

October 19, 2026

# TABLE OF CONTENTS


BACKGROUND ..... 1

STANDARD OF REVIEW ..... 1

ARGUMENT ..... 2

I. Plaintiffs Have Adequately Alleged that They Have Standing to Challenge Agency Defendants' Termination of the I/M Program. ..... 2

A. The Complaint Sufficiently Alleges Injury in Fact. ..... 3

B. Plaintiffs' Harms Are Fairly Traceable to Agency Defendants' Termination of the I/M Program. ..... 8

C. Relief from This Court Will Likely Redress Plaintiffs' Injuries. ..... 9

D. New Hampshire's Enactment of HB2 Does Not Defeat Plaintiffs' Standing. ..... 11

II. The Eleventh Amendment Does Not Bar Plaintiffs' Citizen Suit Claim. ..... 15

III. The Complaint States a Claim for Relief under the CAA's Citizen Suit Provision. ..... 16

A. New Hampshire's I/M Regulations and Programmatic Commitments Are Enforceable SIP Requirements. ..... 16

B. The Complaint Alleges Facts Showing Agency Defendants Are "In Violation" of the New Hampshire SIP's I/M Requirements. ..... 19

C. The Sixth Circuit's Decision in *Korleski* Does Not Defeat Plaintiffs' Claim. ..... 22

CONCLUSION ..... 24

Plaintiffs Marilyn Jonas and Gordon-Darby Holdings, Inc. ("Gordon-Darby") submit this Objection opposing the Motion to Dismiss, ECF 15, filed by Defendants New Hampshire Department of Safety ("NHDOS") Commissioner Robert Quinn, New Hampshire Department of Environmental Services ("NHDES") Commissioner Robert Scott, and New Hampshire Department of Motor Vehicles ("NHDMV") Director John Marasco (together, the "Agency Defendants"). Agency Defendants seek dismissal of Plaintiffs' claims under Rule 12(b)(1) on standing and sovereign immunity grounds and under Rule 12(b)(6) for failure to state a claim.

Each of Agency Defendants' arguments fails. The Complaint alleges that Agency Defendants' ongoing failure to implement New Hampshire's motor vehicle emissions inspection and maintenance ("I/M") program violates the requirements of the Clean Air Act ("CAA") and the state's federally enforceable state implementation plan ("SIP"). Agency Defendants do not dispute that the CAA and the SIP prohibit that program's termination. They merely assert that Plaintiffs cannot sue them for their failure to implement the I/M program and that their hands are tied by state legislation that repealed the statutes underlying that program. For the reasons set forth below, these arguments are mistaken, and the Court should deny Agency Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiffs' objection to the motion to dismiss filed by Governor Ayotte, the New Hampshire Executive Council, and the individual members of the Executive Council (collectively, the "Executive Defendants") provides a statement of the relevant background. To avoid repetition, that statement is incorporated by reference herein.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff must make factual allegations sufficient to 'state a claim to relief that is plausible on its face.'" *Gallagher v. Funeral Source One Supply & Equip.*

*Co.*, No. 14-cv-115-PB, 2015 WL 773737, at *1 (D.N.H. Feb. 24, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is "plausible" if the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The same plausibility standard applies to both a motion to dismiss for lack of standing under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730-31 (1st Cir. 2016). The Court's assessment of standing is "fundamentally distinct," however, from its analysis of whether the plaintiff has stated a claim for relief, and "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Id.* at 734 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

In deciding a motion to dismiss, the Court must "accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor." *Riley v. Alford*, No. 10-cv-218, 2011 WL 540869, at *1 (D.N.H. Feb. 8, 2011) (citing *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009)). In addition to the complaint itself, the Court may consider documents attached to the complaint and judicially noticeable facts. *Id.* (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); Fed. R. Evid. 201.

## ARGUMENT

### I. Plaintiffs Have Adequately Alleged that They Have Standing to Challenge Agency Defendants' Termination of the I/M Program.

To demonstrate Article III standing, a plaintiff must establish three elements: injury in fact, causation, and redressability. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An "injury in fact" requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). The causation element requires that the injury be "fairly traceable to the challenged action of the defendant." *Id.* (citation

modified). Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation modified).

Article III's "case or controversy" requirement is met if "at least one plaintiff" in the suit has standing to sue. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). Here, the Complaint alleges sufficient facts to plausibly support the standing of both Ms. Jonas and Gordon-Darby. Thus, Plaintiffs have met their burden to establish standing at this stage and dismissal is not warranted.

**A. The Complaint Sufficiently Alleges Injury in Fact.**

**1. Ms. Jonas Has Alleged Cognizable Injury in Fact.**

The Complaint alleges that Ms. Jonas is a New Hampshire resident who has had asthma for almost her entire life. Compl. ¶¶ 19-23. Her asthma symptoms, which can prevent her from undertaking even simple daily activities, are triggered and exacerbated by exposure to pollutants like ozone, which is formed in part by motor vehicle emissions. *Id.* ¶ 24, 73-74. Agency Defendants' termination of the I/M program is causing New Hampshire's motor vehicle emissions to increase relative to the level that would have been achieved if the I/M program remained in place, leading to higher levels of ozone in New Hampshire. *Id.* ¶¶ 26-29. As a consequence of the program's termination, Ms. Jonas is exposed to those higher vehicle emissions and ozone levels whenever she engages in outdoors activities, including completing household tasks or working on her farm. *Id.* ¶¶ 30-32. She is concerned that she will experience worse and more frequent asthma symptoms from increased exposure to these pollutants, harming her quality of life and requiring her to use and purchase more medications to manage her symptoms. *Id.* ¶¶ 25, 36.

Ms. Jonas's harms unquestionably constitute injury in fact under Article III. Agency Defendants' termination of the I/M program exposes her to additional motor vehicle emissions and higher ozone levels, and "air-pollutant exposure is an injury-in-fact, regardless of whether additional harms attend that exposure." *Conservation Law Found. v. Acad. Express, LLC*, 129 F.4th

78, 88 (1st Cir. 2025) ("*CLF*"). Likewise, Ms. Jonas is understandably concerned these exposures will cause her to suffer worse and more frequent asthma attacks. A "reasonable fear of health effects from pollution" is also a cognizable injury, and "it is entirely reasonable … to believe that repeated and continuing CAA violations pose a realistic threat to those who are exposed to the excessive fumes." *Id.* at 89.

Agency Defendants do not dispute that these health-based harms from increased emissions are cognizable injuries for standing. Their sole argument is that certain *other* safety-related harms alleged in the Complaint are not connected to the emissions I/M program codified in New Hampshire's SIP. ECF 15 at 13. But Agency Defendants are silent as to Ms. Jonas's health-based harms from excess emissions, and as a result have conceded these harms constitute injury in fact.

**2. Gordon-Darby Has Alleged Cognizable Injury in Fact.**

Because Ms. Jonas has plausibly alleged an injury in fact, the Court need not reach whether Gordon-Darby has also sufficiently pleaded facts showing its own injury in fact. *See Murthy*, 603 U.S. at 57. Nonetheless, the Complaint adequately alleges that Gordon-Darby is suffering cognizable injury from Agency Defendants' actions. Gordon-Darby is the sole owner of Gordon-Darby NHOST Services, Inc. ("Gordon-Darby NHOST"), which served as the contracted vendor to supply testing equipment, software, inspection stickers, training, and support services for New Hampshire's I/M program from 2004 until its premature termination in February 2026. Compl. ¶¶ 44, 103-08. Gordon-Darby NHOST's sole business purpose is to implement the New Hampshire I/M program pursuant to contracts it entered with New Hampshire's licensed inspection stations and its contract with NHDOS, and its sole source of revenue is the fixed fee paid by those inspection stations for each inspection. *Id.* ¶ 45. On September 16, 2025, NHDOS notified Gordon-Darby NHOST that it was terminating the vendor contract effective January 31, 2026, "given the fact that the motor vehicle inspections program will soon be abolished." *Id.* ¶ 121 & Ex. 4. NHDOS

confirmed the contract's termination and indefinitely suspended the I/M program on February 13, 2026. *Id.* ¶¶ 129-31 & Ex. 10.

These actions have inflicted economic harm on Gordon-Darby. Agency Defendants' refusal to implement the I/M program and their termination of the vendor contract deprived Gordon-Darby and its subsidiary of revenue that they would have otherwise collected for inspections conducted during the remainder of the contract term, which was scheduled to expire at the end of 2026. *Id.* ¶¶ 46, 108. In addition to these direct revenue losses, Gordon-Darby was also harmed by the loss of its opportunity to bid on *future* contracts to implement the I/M program. *Id.* ¶¶ 48-50. These economic injuries are judicially cognizable harms that meet the injury in fact requirement. "Monetary costs are of course an injury" for Article III purposes. *Diamond Alt. Energy*, 606 U.S. at 111. And there is a "well-established line of cases holding that loss of a non-illusory opportunity to pursue a benefit"—such as the opportunity to bid on future business—"constitutes an injury in fact." *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 292 (5th Cir. 2018). This is true "even though the plaintiff may not be able to show that it was certain to receive [the] benefit had it been accorded the lost opportunity" to pursue it. *Teton Hist. Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015) (emphasis omitted) (quoting *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989)). Thus, both Gordon-Darby's loss of revenue from termination of the I/M program and its lost opportunity to pursue future work as the state's I/M program vendor support its standing here.

Agency Defendants argue that Gordon-Darby's claimed harms "cannot establish a cognizable 'injury-in-fact'" because its economic interests are "purely private" and not "legally protected by the CAA." ECF 15 at 11, 13. This apparent attempt to invoke a "zone of interests" argument against standing fails for two reasons. First, although the "zone of interests" doctrine is

sometimes characterized as a "prudential standing" requirement, it is not an element of Article III standing and does not implicate the Court's power to hear a case. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Instead, it merely "'relates to whether the plaintiff has a cause of action'" under the statutory claim being invoked and thus "is a merits issue rather than a jurisdictional issue." *Hayward v. Bank of N.Y. Mellon*, 688 F. Supp. 3d 22, 28 (D.N.H. 2023) (quoting *United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017)).

Second, the CAA does not require plaintiffs to allege environmental or health-based harm to state a citizen suit claim. While some statutes limit citizen enforcement to plaintiffs with specific interests, *see Bennett v. Spear*, 520 U.S. 154, 164-65 (1997) (discussing examples), Congress did not incorporate a similar "zone of interests" test in the CAA. Instead, 42 U.S.C. § 7604(a) provides a cause of action to "any person," including those claiming economic harm from a violation of the CAA like Gordon-Darby does here. *George E. Warren Corp. v. EPA*, 159 F.3d 616, 620 (D.C. Cir. 1998); *see Bennett*, 520 U.S. at 164-65 (1997) (discussing "remarkable breadth" of "any person" language in Endangered Species Act's ("ESA") analogous citizen suit provision).

**3. Agency Defendants' Objections on the Merits Have No Bearing on Standing.**

Rather than challenging the sufficiency of Plaintiffs' factual allegations regarding injury-in-fact, Agency Defendants devote most of their argument on this prong of standing simply disputing whether they are in violation of the CAA. *See* ECF 15 at 7-9 (arguing I/M program's termination did not violate CAA because it was mandated by state law), 9-11 (arguing state officials' actions in their capacity as regulators cannot be "violations" enforceable through citizen suit claims), 11-12 (arguing lack of I/M program vendor does not violate state's SIP). These arguments improperly conflate Agency Defendants' merits arguments with the separate question of standing and do not support dismissal for lack of Article III standing.

Agency Defendants' attempt to shoehorn the merits into this standing inquiry rests on the Supreme Court's statement in *Lujan* that injury in fact entails "an invasion of a *legally protected interest*." 504 U.S. at 560 (emphasis added); *see* ECF 15 at 11. Agency Defendants apparently misinterpret this language as meaning that to show standing, a plaintiff must also show it has a legal "right" to vindicate its claimed injury through some cause of action. *Id.* at 9, 12. In their view, the health and economic harms alleged by Plaintiffs cannot support standing unless Plaintiffs also establish that they have stated a claim for relief under the CAA.

Agency Defendants misread *Lujan*. Courts have expressly rejected their interpretation of that case,[1] and Agency Defendants identify no case applying their narrow reading of its "legally protected interest" language. Indeed, the Supreme Court has long since rejected such a "legal right" theory of standing, and there is no evidence that *Lujan* "mean[t] to suggest a return to" that restrictive theory. *Parker*, 478 F.3d at 377 (discussing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153-54 (1970)).

In particular, courts reject Agency Defendants' view of the injury-in-fact requirement because it "improperly grafts the standing inquiry onto the merits of" the plaintiff's claim. *Club Italia*, 470 F.3d at 292, *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011) ("It is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action.") (citation modified); *Parker*, 478 F.3d at 377 (explaining "'legally protected interest,' as used in *Lujan*, could not have been intended to deviate from [the]

[1] *See, e.g.*, *Parker v. Dist. of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007); *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 292 (6th Cir. 2006), *overruled on other grounds by Engquest v. Or. Dep't of Agric.*, 553 U.S. 591 (2008); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016); *Iowans for Alts. to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724, 734 (S.D. Iowa 2025); *Vapor Tech. Ass'n v. Wooten*, 2025 WL 1787420, *3 (E.D.N.C. June 27, 2025).

general proposition that we assume the merits when evaluating standing”). Agency Defendants commit precisely that error here, conflating Plaintiffs’ standing (*i.e.*, whether their health and economic harms are the type of concrete injuries that sharpen an abstract dispute into a justiciable case or controversy) with merits questions (*i.e.*, whether Plaintiffs can state a claim for relief under the CAA for the actions that caused those harms). But standing is “fundamentally distinct” from whether the plaintiff has stated a claim for relief, and it “in no way depends on the merits of the plaintiff’s contention that particular conduct is illegal.” *Hochendoner*, 823 F.3d at 734 (quoting *Warth*, 422 U.S. at 500).

Injury in fact does not require the plaintiff to have a “‘legal right,’ or a right protected by the law of property, contract, tort, or statute.” *Club Italia*, 470 F.3d at 292. *Lujan*’s “legally protected interest” language simply means a “cognizable interest.” *See Parker*, 478 F.3d at 377; *Carlsen*, 833 F.3d at 908. A cognizable interest is any type of harm “‘traditionally recognized as providing’ bases for lawsuits ‘in American courts.’” *CLF*, 129 F.4th at 87 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)). Notably, a plaintiff may have a cognizable interest in something even if it does not have a legal right to enforce it. *Parker*, 478 F.3d at 377. Here, Ms. Jonas’s health-based harms and Gordon-Darby’s economic harms fall squarely within the realm of injuries traditionally recognized as supporting standing. *See CLF*, 129 F.4th at 88-89 (recognizing “air-pollutant exposure” and “reasonable fear of health effects from pollution” as cognizable injury); *Diamond Alt. Energy*, 606 U.S. at 111 (“Monetary costs are of course an injury.”). Accordingly, Plaintiffs have sufficiently alleged injury in fact.

**B. Plaintiffs’ Harms Are Fairly Traceable to Agency Defendants’ Termination of the I/M Program.**

Agency Defendants’ only argument on this element of standing is that terminating the I/M program “was not a decision of the Agency Defendants” and that the sole cause of Plaintiffs’ harms

is the state's enactment of legislation repealing the state laws underpinning the program ("HB2"). ECF 15 at 14. But Article III does not require that a defendant's actions be the only—or even the proximate—cause of a plaintiff's harm. Instead, the injury need only be "fairly traceable" to the challenged conduct. *Lujan*, 504 U.S. at 560 (citation modified). As such, the defendants' conduct can be just "one among multiple causes" for the claimed injury. *CLF*, 129 F.4th at 90.

Here, Agency Defendants' place in the causal chain is clear and direct. Agency Defendants are the state officials charged with administering and enforcing New Hampshire's I/M program. Compl. ¶¶ 53-55; *see, e.g.*, RSA §§ 21-P:4, 125-C:6, 125-S:3, 266:1 (2025). Even if they did not enact HB2, they did carry out the I/M program's termination—including by formally suspending the program, revoking inspection stations' authority to perform inspections, and ending the program vendor's contract—and have not resumed it despite the fact that the program remains in effect under federal law. Compl. ¶¶ 121-22, 129-32 & Exs. 4-5, 10-12. Thus, Plaintiffs' injuries are fairly traceable to Agency Defendants' actions challenged here.[2]

**C. Relief from This Court Will Likely Redress Plaintiffs' Injuries.**

To establish redressability, a plaintiff must show only that judicial relief is "likely"—not "certain"—to redress its injury. *Diamond Alt. Energy*, 606 U.S. at 124. Plaintiffs have brought this action under the CAA's citizen suit provision, which authorizes district courts to enforce the I/M requirements of a state's SIP, including by compelling compliance through injunctive relief. 42 U.S.C. § 7604(a), (f). As such, this Court may order Agency Defendants to resume implementing

[2] Notably, Agency Defendants' argument would eviscerate private plaintiffs' ability to seek redress under *Ex parte Young*, 209 U.S. 123 (1908), when state officials violate federal law. That doctrine, discussed in more detail in Plaintiffs' objection to Executive Defendants' motion to dismiss, ECF 21 at 10-13, provides a limited exception to state sovereign immunity allowing claims to "enjoin state officials to conform future conduct to the requirements of federal law." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015). But under Agency Defendants' view, plaintiffs could never meet the causation prong of standing when those state officials are carrying out unconstitutional laws enacted by their state's legislature.

the I/M program as codified in New Hampshire's SIP. Such an order would likely redress Ms. Jonas's injuries. Agency Defendants' termination of the I/M program has eliminated the emission reductions that program provides; ordering Agency Defendants to resume the I/M program would restore those emission reductions, reduce concentrations of pollutants like ozone, and alleviate Ms. Jonas's respiratory symptoms and her concern about future deterioration. Compl. ¶¶ 26-37.

The Complaint also sufficiently alleges that Gordon-Darby's economic harms from lost inspection revenue and its lost opportunity to bid for future business can be redressed by this Court. As currently codified in the SIP, New Hampshire's I/M program *cannot operate* without the services of an authorized vendor retained by NHDOS to administer the program's day-to-day operations.[3] Compl. ¶¶ 103-06. Thus, to comply with any order requiring them to implement the I/M program, Agency Defendants will necessarily have to retain a new vendor, which in turn provides Gordon-Darby with an opportunity to bid for that contract. *Id.* ¶ 48; RSA 21-I:11. The opportunity to bid on a new contract alone would redress some of Gordon-Darby's economic harm from termination of the I/M program and is sufficient to satisfy the redressability prong of standing, even if Gordon-Darby is not "certain to receive" the contract it seeks. Compl. ¶¶ 49-50; *CC Distribs., Inc.*, 883 F.2d at 150 (emphasis omitted). Moreover, the Complaint plausibly alleges there is a reasonable likelihood that Gordon-Darby NHOST *would* be selected as the new I/M program vendor for a resumed program due to its prior experience and possession of the necessary

[3] New Hampshire's Attorney General, speaking on behalf of Agency Defendants, admitted as much during the Executive Council's February 4, 2026 special meeting to consider NHDOS's request to extend Gordon-Darby NHOST's vendor contract. At minutes 5:00-5:50 of the audio recording from that meeting, available on the Executive Council's public website at https://www.sos.nh.gov/administration/governor-executive-council/meetings, the Attorney General acknowledged that "under the statute we have to have an authorized vendor" and, after describing the services Gordon-Darby NHOST provided, stated "we have to have a vendor doing that work to have the program." The Court may take judicial notice of these statements under Federal Rule of Evidence 201(b)(2).

equipment and software. Compl. ¶ 51. Thus, Plaintiffs have sufficiently shown that relief from this Court will likely redress their harms.

**D. New Hampshire's Enactment of HB2 Does Not Defeat Plaintiffs' Standing.**

Agency Defendants claim Plaintiffs' harms are not redressable because even if this Court orders them to resume implementing the I/M program, Agency Defendants are powerless to comply now that HB2 has repealed the state laws underlying that program. ECF 15 at 15-17. This argument fails because HB2's repeal provisions are preempted by federal law and are thus legally ineffective.[4] Where "state laws directly conflict with the requirements of federal law, the Supremacy Clause requires that they be given no effect." *New Hampshire v. Ramsey*, 366 F.3d 1, 30 (1st Cir. 2004). Because HB2's provisions repealing the state laws that authorize the I/M program directly conflict with New Hampshire's federally enforceable SIP, they are legally void, meaning Agency Defendants retain the necessary authority to implement the program.

Agency Defendants' misguided arguments against preemption do not support dismissal for lack of jurisdiction. First, these arguments go to the *merits* of Plaintiffs' case and are irrelevant for purposes of *standing*. As part of their claim, Plaintiffs seek a declaration that HB2 is preempted. Compl. 27. The Court need not (and should not) resolve the merits of that request for relief to decide whether Plaintiffs alleged sufficient facts for standing. The standing inquiry asks whether it is likely the claimed harm "will be redressed by a *favorable decision*," *Bennett*, 520 U.S. at 167 (emphasis added), and thus presumes plaintiffs' success on the merits. Here, a favorable decision would include a declaration that HB2's repeal provisions are preempted, clearing the way for Agency Defendants to comply with their federal obligations under the SIP.

[4] This Court reached the same conclusion in Gordon-Darby's previous suit over the I/M program's termination. *See Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, 821 F. Supp. 3d 202, 213-14 (D.N.H. 2026).

Second, Agency Defendants' arguments against preemption are simply wrong. Despite their posturing about Plaintiffs' purported "misunderstand[ing]," ECF 15 at 15, it is Agency Defendants who rely on a "mistaken understanding of the law of preemption" and misstate the applicable standard for conflict preemption. *New Hampshire*, 366 F.3d at 30 (distinguishing between express and conflict preemption). Only *express* preemption involves the search for "Congressional intent to preempt state law" that is the focus of Agency Defendants' argument. ECF 15 at 15 (citing *Medicaid & Medicare Advantage Prods. Ass'n of P.R. Inc. v. Hernández*, 58 F.4th 5, 11 (1st Cir. 2023) (analyzing effect of statute's explicit "preemption clause")). But Plaintiffs' Complaint invokes the separate doctrine of *conflict* preemption, which provides that "state and local measures 'are preempted when they conflict with federal law.'" *Ass'n to Pres. & Protect Loc. Livelihoods v. Sidman*, 147 F.4th 40, 49 (1st Cir. 2025) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Under this practical inquiry, preemption occurs wherever "compliance with both federal and state regulations is a physical impossibility" or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation modified); *see also Nat'l Educ. Ass'n-N.H. v. N.H. Att'y Gen.*, 806 F. Supp. 3d 166, 202-03 (D.N.H. 2025).

Conflict preemption applies to the provisions of HB2 repealing the statutes underlying New Hampshire's I/M program—specifically, the provisions at 2025 N.H. Laws Ch. 141, § 141:253—because it is impossible for Agency Defendants to comply with both HB2 and federal law. New Hampshire's federally enforceable SIP requires implementation of the I/M program, and the State's I/M regulations at Saf-C 3200 are incorporated into federal law by reference. *See* 40 C.F.R. § 52.1520(c), (d); 89 Fed. Reg. 33232, 33233 (Apr. 29, 2024). At the same time, HB2 purports to repeal the state statutes underlying the program, including the laws authorizing Agency Defendants

to carry out necessary program functions. 2025 N.H. Laws Ch. 141, § 141:253. Because HB2's repeal provisions make it impossible to comply with the SIP, "the Supremacy Clause tells us the state law must yield." *Martin v. United States*, 605 U.S. 395, 409 (2025).

Other courts have reached that very conclusion when faced with a state's efforts to terminate its I/M program through legislation without EPA approval of a revised SIP. *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1164 (D. Ariz. 2001); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920, 924 (W.D. Ky. 2004). There, Arizona and Kentucky enacted laws repealing the authority underlying their I/M programs. In both cases, the court found that because the state's repeal legislation conflicted with the applicable SIP's I/M requirements, that legislation was "ineffective and preempted by federal law." *Sweat*, 200 F. Supp. 2d at 1172; *accord Ky. Res. Council*, 304 F. Supp. 2d at 927 ("While the Kentucky statute [repealing the I/M program] certainly presents a quandary because the District strove to follow state law, the correct course of action here should not have been in doubt. Federal law controls.").

Agency Defendants' passing reference to the anti-commandeering doctrine fares no better because the relief sought here would not compel them to carry out a "federal regulatory program." ECF 15 at 17 (citing *Printz v. United States*, 521 U.S. 898 (1997)). Rather, this case seeks to require New Hampshire officials to comply with *New Hampshire's own SIP*, which the State crafted itself and chose to make federally enforceable by submitting it to EPA for approval. Enforcing the requirements of a federal program that New Hampshire voluntarily opted into does not violate the Tenth Amendment. The CAA's system of cooperative federalism does not implicate anti-commandeering principles because although the CAA establishes federal regulatory programs with minimum requirements that must be met, it leaves each state the choice to either (1) develop and administer its own federally enforceable SIP satisfying the CAA's requirements, or (2) decline to

participate and allow EPA to directly administer those programs via a federal implementation plan. *See Texas v. EPA*, 726 F.3d 180, 196-97 (D.C. Cir. 2013); *Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 175 (D.C. Cir. 2015); *New York v. United States*, 505 U.S. 144, 167-68 (1992) (affirming constitutionality of statutes that allow states to administer federal programs but provide direct federal administration if state does not opt in).

The First Circuit has recognized that once a state voluntarily opts into a federal program, it must abide by the federal laws and regulations governing that program, even if the state subsequently enacts laws that conflict with those requirements. *See New Hampshire*, 366 F.3d at 29-30 (holding federal requirements that state accepted by joining federal highway vending machine program preempted later-enacted state contracting law). Likewise, once a state opts to administer one of the CAA's regulatory programs through its SIP (rather than allowing EPA to administer the program through a federal implementation plan), federal courts may enforce that SIP against the state so long as it remains in effect, even if the state subsequently changes its mind about that program. *See Friends of the Earth v. Carey*, 552 F.2d 25, 35-37, 39 (2d Cir. 1977) ("*Friends of the Earth II*") ("In the context of the enforcement of the [SIP] through citizen suit, the choices and procedures are the products of State choice, not of federal policy, and may legitimately be enforced by the district court."). In the context of the CAA's I/M provisions, courts have specifically required states to continue implementing their applicable SIP's I/M requirements even after the state repealed the underlying statutes. *Sweat*, 200 F. Supp. 2d at 1179; *Ky. Res. Council*, 304 F. Supp. 2d at 928.

The district court decision in *Delaware Valley* is not to the contrary. *See* ECF 15 at 15 (citing *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 533 F. Supp. 869, 878-879 (E.D. Pa. 1982). That court considered only whether a state law prohibiting Pennsylvania from

operating an I/M program conflicted with the CAA's provisions requiring certain SIPs to provide for an I/M program. *Del. Valley*, 533 F. Supp. at 879. The court found no conflict with the *statute itself*, relying on a line of cases reflecting the principle (later clarified in cases like *Texas v. EPA*, above) that the CAA allows states like Pennsylvania to choose between either implementing a program itself through its SIP or opting out and letting EPA directly administer the program. *See id.* (citing, *inter alia*, *Maryland v. EPA*, 530 F.2d 215, 227-228 (4th Cir. 1975)). It did not consider whether a state law like HB2 would conflict with (and be preempted by) the terms of an *approved SIP* already adopted by the state and approved into federal law by EPA. Moreover, *Delaware Valley* appears to no longer be good law, as two cases in the same district have since held that federal courts *can* compel state officials to implement the I/M requirements codified in Pennsylvania's SIP. *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705, 725 (E.D. Penn. 2002); *Citizens for Penn.'s Future v. Mallory*, No. 02-cv-798, 2002 WL 31845880, *12 (E.D. Penn. Dec. 18, 2002). Thus, to the extent the Court reaches Agency Defendants' preemption and anti-commandeering arguments, it should reject them and hold that Plaintiffs adequately alleged standing.

## II. The Eleventh Amendment Does Not Bar Plaintiffs' Citizen Suit Claim.

Agency Defendants' sovereign immunity jurisdictional defenses also fail. Agency Defendants' arguments for dismissal under the Eleventh Amendment are all presented in substantially similar form in Executive Defendants' motion to dismiss. *Compare* ECF 15 at 18-22; *with* ECF 14 at 19-23. For the sake of efficiency, Plaintiffs' responses on those issues as raised by Agency Defendants are set forth in Plaintiffs' separately filed objection to Executive Defendants' motion to dismiss alongside Plaintiffs' responses to Executive Defendants' arguments on those same issues, and are incorporated here by reference. *See* ECF 21 at 10-13, 15-16.

## III. The Complaint States a Claim for Relief under the CAA's Citizen Suit Provision.

Plaintiffs bring this case under the CAA's citizen suit provision, which provides that "any person" may bring a cause of action "against any person … who is alleged to … be in violation of an emission standard or limitation under" the CAA. 42 U.S.C. § 7604(a)(1). Agency Defendants seek dismissal under Rule 12(b)(6) on two theories: (1) the Complaint does not allege they "engaged in any unlawful act under the SIP, the CAA, or any law"; and (2) the CAA does not permit them to be sued in their capacity as regulators. ECF 15 at 22. Both arguments lack merit.

### A. New Hampshire's I/M Regulations and Programmatic Commitments Are Enforceable SIP Requirements.

The CAA's definition of "emission standard or limitation" specifically includes "any condition or requirement under an applicable [SIP] relating to … vehicle inspection and maintenance programs." *Id.* § 7604(f)(3). A state's obligations and commitments under its SIP to implement and enforce such a program clearly meet this definition. *See Sweat*, 200 F. Supp. 2d at 1168-71 (finding termination of Arizona's I/M program violated SIP); *Ky. Res Council*, 304 F. Supp. 2d at 926 (finding termination of Kentucky district's I/M program violated SIP); *Clean Air Council*, 226 F. Supp. 2d at 720-21 (finding Pennsylvania's failure to fully implement second phase of I/M requirements by deadline stated in SIP violated CAA).

New Hampshire's SIP incorporates the state's emissions-related I/M regulations codified at N.H. Admin. Code Saf-C 3200. 40 C.F.R. § 52.1520(c) (listing Saf-C 3200 among EPA-approved regulations in New Hampshire SIP with limited exceptions); *see* 89 Fed. Reg. at 33233 (approving most recent version of I/M regulations). The SIP also incorporates the program implementation commitments that New Hampshire made in 2011 when submitting its I/M program

to EPA in its current form.[5] 40 C.F.R. § 52.1520(d) (incorporating "SIP Narrative associated with New Hampshire Vehicle Inspection and Maintenance Program SIP Revision"); *see* 78 Fed. Reg. 5292 (Jan. 25, 2013). Thus, New Hampshire's emissions-related I/M regulations and the programmatic commitments it made to secure EPA's approval of those regulations are "condition[s] or requirement[s] under an applicable implementation plan relating to [a] vehicle inspection and maintenance program[]," and accordingly they are "emission standard[s] or limitation[s]" enforceable through a citizen suit. 42 U.S.C. § 7604(f)(3).

Agency Defendants' conclusory statement that "the I/M program does not and cannot remain in effect'" is simply wrong. ECF 15 at 7. HB2's enactment in June 2025 does not affect the continued applicability of the SIP's I/M requirements. Once EPA approves a state's SIP, its contents remain in effect and federally enforceable unless and until EPA takes *final* action under the CAA to approve a revised SIP.[6] *General Motors Corp. v. United States*, 496 U.S. 530, 540 (1990). This is true as a matter of law even if the state has submitted a SIP revision to EPA, even if EPA has *proposed* to approve such a SIP revision, and even if the state has already amended—or even repealed—the state laws or regulations underlying the current SIP. *See id.* (finding EPA had authority to enforce conditions of applicable SIP even though, when enforcement commenced, SIP

---

[5] That SIP narrative is not published in the Code of Federal Regulations but is on file with EPA at https://www.regulations.gov/document/EPA-R01-OAR-2012-0149-0005. NHDES, "State of New Hampshire: Motor Vehicle Inspection and Maintenance State Implementation Plan Revision" (Nov. 1, 2011) ("2011 SIP Narrative").

[6] While EPA has *proposed* to grant New Hampshire's requests to leave the Ozone Transport Region and to remove the I/M program from its SIP, these proposals likewise do not affect the current SIP's applicability. 91 Fed. Reg. 51644 (Aug. 11, 2026); 91 Fed. Reg. 51640 (Aug. 11, 2026). Plaintiffs each submitted comments to EPA identifying substantial legal and analytical defects in EPA's proposals. *See* https://www.regulations.gov/comment/EPA-HQ-OAR-2026-2179-0027 (comments of Marilyn Jonas); https://www.regulations.gov/comment/EPA-HQ-OAR-2026-2179-0025 (comments of Gordon-Darby).

revision seeking to remove that condition had been pending before EPA for nearly 2 years); *United States v. Cinergy Corp.*, 623 F.3d 455, 457-58 (7th Cir. 2010); *Sweat*, 200 F. Supp. 2d at 1172.

New Hampshire's I/M regulations include numerous specific requirements that directly apply to Agency Defendants, all of which are federally enforceable emission standards or limitations under New Hampshire's SIP. *See* Compl. ¶¶ 143-46. Moreover, New Hampshire's broader commitment to *actually implement* the I/M program codified in its SIP is itself an enforceable requirement of the SIP. Courts have long recognized that the "emission standards or limitations" enforceable under 42 U.S.C. § 7604 are not limited to the numerical emission limits or other substantive or procedural requirements codified in the state's regulations or incorporated in permits. Citizens may also file suit to enforce any "specific strategy or commitment in the SIP" made by the state, provided the suit seeks to compel the state's compliance with a specific, identifiable commitment and not merely "general compliance." *Coal. Against Columbus Center v. City of New York*, 967 F.2d 764, 769-70 (2d Cir. 1992) (quoting *Council of Commuter Orgs v. Gorsuch*, 683 F.2d 648, 670 (2d Cir. 1982)).

Thus, courts have found a state's commitment in a SIP to adopt and enforce emission limits is itself an "emission standard or limitation" enforceable through a citizen suit. *See id.* at 771 (allowing citizen suit to enforce city's commitment to impose "mitigating measures" if a proposed project's emissions will violate or exacerbate air standard); *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181-82 (9th Cir. 2015) ("*Arvin*") (holding California SIP's commitment to adopt and implement measures to achieve specific emission reductions in the future was enforceable through citizen suits); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021) (finding same for commitment to prepare report and implement measures developed therein if area does not meet air quality milestones or attainment). Courts have also found that a state's failure to implement the

requirements of its SIP violates an enforceable commitment and is actionable in a citizen suit. *See Friends of the Earth II*, 552 F.2d at 35-36 (holding court erred in finding state and city "were not obligated to enforce the [SIP]"); *see also Friends of the Earth v. Carey*, 535 F.2d 165, 169 (2d Cir. 1976) (holding that "once adopted by a state and approved by the EPA, [a SIP] becomes controlling and *must be carried out* by the state") (emphasis added).

Accordingly, the enforceable "emission standards or limitations" of New Hampshire's SIP include individual regulations specifically requiring action by Agency Defendants as well as New Hampshire's broader commitment to implement the I/M program in its approved SIP.

**B. The Complaint Alleges Facts Showing Agency Defendants Are "In Violation" of the New Hampshire SIP's I/M Requirements.**

The Complaint alleges Agency Defendants have completely ceased implementing and enforcing New Hampshire's I/M program. Compl. ¶ 142. This failure to comply with the State's own enforceable commitments under the program violates New Hampshire's SIP, as Agency Defendants and their representatives have repeatedly conceded. *Id.* ¶ 134; *infra* at 20 n.7. Thus, Agency Defendants are currently "in violation" of New Hampshire's applicable SIP and dismissal is unwarranted.

Due to Agency Defendants' actions, the I/M program is presently both inactive and inoperable. On February 13, 2026, Commissioner Quinn informed the public that the I/M program was "suspended until further notice" and "vehicles will not be required to obtain an annual state inspection" as required under the SIP. Compl. ¶ 129 & Ex. 10. The same day, Director Marasco revoked every licensed inspection station's authority to perform inspections under the I/M program, declared they "shall not issue state inspection stickers," and directed stations to return all stickers purchased from the NHDMV by April 30, 2026. *Id.* ¶ 130 & Ex. 11. Commissioner Quinn also confirmed Gordon-Darby NHOST's contract to administer the I/M program had been

terminated and declared the company was "no longer authorized to continue performing the services set out in the Agreement or to operate the State's vehicle inspection program." *Id.* ¶ 131 & Ex. 12. As of this filing, Agency Defendants have not resumed the program, retained a new program vendor, or authorized any inspection stations to conduct inspections. *Id.* ¶ 132.

Agency Defendants' failure to implement the I/M program violates the requirements of New Hampshire's applicable SIP.[7] Courts have unanimously held that this type of failure to implement a SIP's I/M requirements is actionable under the CAA's citizen suit provision. In *Sweat*, *Kentucky Resources Council*, *Clean Air Council*, and *Citizens for Pennsylvania's Future*, state or local regulators eliminated or otherwise refused to implement I/M requirements without first obtaining EPA's approval of a revised SIP. In each case, the court held the relevant agency's failure to implement and enforce its SIP placed it "in violation" of an emission standard or limitation under the CAA. *See Clean Air Council*, 226 F. Supp. 2d at 722; *Sweat*, 200 F. Supp. 2d at 1171.

Here, the Complaint alleges Agency Defendants are violating their obligations under several specific provisions of New Hampshire's I/M regulations incorporated in the SIP that directly impose duties upon those officials. These include regulations requiring Agency Defendants to issue certificates of appointment authorizing qualified inspection stations to perform inspections, to provide for training and certification of qualified inspectors, to provide for

[7] Agency Defendants have repeatedly conceded as much in other proceedings, which this Court may take notice of under Federal Rule of Evidence 201(b)(2). At the January 22, 2026 preliminary injunction hearing in *Gordon-Darby*, Commissioners' counsel admitted to this Court that the SIP requires the I/M program's implementation and that they would be in violation of the SIP if they proceeded with their planned termination of the program. *See* Transcript, *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508 (D.N.H. Jan. 22, 2026), ECF 36 at 23-24, 25-26, 29. In their interlocutory appeal from the preliminary injunction, the Commissioners similarly admitted that the program's termination "placed the State in violation of the CAA by disabling it from implementing the I/M program and may open the State to appropriate enforcement under 42 U.S.C. § 7604(a)." Appellants' Am. Opening Br., *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209, Doc. 00118462675 at 54 (1st Cir. June 16, 2026).

inspection sticker purchases by inspection stations, and to retain a "supplier" (*i.e.*, contracted I/M program vendor) to perform the various services necessary for the program to function. *See* Compl. ¶¶ 143-46 (citing regulations).

More broadly, Agency Defendants' refusal to implement the I/M program violates their fundamental, enforceable commitment in the SIP to carry out that program. As noted above, a state's commitment to carry out the programs in its SIP is itself enforceable through a citizen suit. Indeed, that was precisely the situation presented in each of the four previous cases in which states stopped implementing their I/M programs without EPA approval. In *Sweat*, *Clean Air Council*, *Citizens for Pennsylvania's Future*, and *Kentucky Resources Council*, the courts did not identify any specific regulation in the relevant state's administrative code that the state was violating by terminating its I/M program. Instead, the "emission standard or limitation" violated in each case was simply the state's commitment in its SIP to "compl[y] with its own federally mandated plan." *Clean Air Council*, 226 F. Supp. 2d at 722; *see also Sweat*, 200 F. Supp. 2d at 1171 ("[T]he repeal of [specific I/M requirements], and in turn Arizona's subsequent non-enforcement of the EPA-approved SIP, constituted a violation of federal law."); *Ky. Res. Council*, 304 F. Supp. 2d at 926 (finding liability because applicable SIP "requires that Jefferson County maintain a[n I/M] program" and "by terminating [it], the [agency] violated federal law by eliminating the program").

Here, New Hampshire's SIP includes a clear commitment to implement the I/M program. The 2011 SIP Narrative, which is itself incorporated in the SIP, 40 C.F.R. § 52.1520(d), states New Hampshire "has committed to implementing a modified OTR low-enhanced I/M program state-wide" and describes in detail the various program elements that New Hampshire will carry out. SIP Narrative at 7; *see generally id.* at 7-23. Agency Defendants' actions clearly violate this

commitment. Simply put, Agency Defendants are not implementing the I/M program and have dismantled the regulatory infrastructure necessary for it to function. *See* Compl. ¶¶ 129-32.

Thus, the Complaint sufficiently alleges that Agency Defendants are in violation of the I/M requirements of New Hampshire's SIP, and dismissal under Rule 12(b)(6) is unwarranted.

**C. The Sixth Circuit's Decision in *Korleski* Does Not Defeat Plaintiffs' Claim.**

Agency Defendants argue they cannot be sued under the CAA's citizen suit provision in their capacity as "regulators *qua* regulators," based entirely on one case from the Sixth Circuit. ECF 15 at 9-11 & 22 (citing *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012)). *Korleski* read the term "violation" in 42 U.S.C. § 7604(a) to authorize only suits to "enforce the substantive provisions of the CAA against regulated parties," relying primarily on the Supreme Court's decision in *Bennett v. Spear* interpreting the ESA's citizen suit clause. 681 F.3d at 351 (quoting *Bennett*, 520 U.S. at 173) (citation modified). But *Korleski* is an outlier case that has been rejected by EPA and other circuits, involves dissimilar facts, and misinterprets *Bennett*. As such, this Court should decline to follow *Korleski*.

Several other circuits have confirmed that state officials may be sued and held liable under 42 U.S.C. § 7604(a) in their "regulatory capacity" for failure to implement their SIPs.[8] *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 324-25 (3d Cir. 1989); *see also Friends of the Earth II*, 552 F.2d at 36; *Coal. Against Columbus Ctr.*, 967 F.2d at 771; *Arvin*, 786 F.3d at 1181-82. It was precisely this kind of failure that formed the basis of the violations established in each of the four

---

[8] Commissioner Scott recognized as much when he warned the New Hampshire legislature that terminating the I/M program without EPA approval would subject the State to citizen suits like this one. *See* Compl. Ex. 1 at Notice Letter Exs. 2-3. The Commissioners also conceded in *Gordon-Darby* that they may be sued under the CAA in their "regulatory capacity." *See* Mem. Law Supp. Defs.' Mot. Dismiss, *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508 (D.N.H. Jan. 22, 2026), ECF 20-1 at 8; Appellants' Mot. Stay Order Pending Appeal, *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209, Doc. 00118419058 at 14 (1st Cir. Mar. 19, 2026).

prior cases involving states' refusal to implement I/M programs. *See supra* p. 21 (discussing cases). At least one circuit has directly considered *Korleski* and declined to follow it. *See Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 23-cv-794, 2026 WL 2070043, *3-*7 (E.D. Cal. July 17, 2026) (discussing Ninth Circuit's rejection of *Korleski* in *Arvin* and *Association of Irritated Residents*). EPA has also rejected *Korleski*, asserting it was "wrongly decided" given the significant differences between the CAA and ESA. *Id.* at *3 (discussing EPA arguments in *Arvin*).

Given the overwhelming weight of contrary authority, this Court should decline to follow *Korleski* here. First, this case presents a significant factual distinction because *Korleski* did not involve state officials' failure to implement their I/M program obligations. Instead, the alleged violation in *Korleski* was the Ohio EPA's adoption and implementation of emissions permitting regulations that differed from the regulations in its applicable SIP. *Korleski*, 681 F.3d at 344-46. This is no superficial difference: the CAA's citizen suit provision explicitly defines the "emission standard[s] or limitation[s]" for which a defendant may be found "in violation" to include "any condition or requirement under an applicable implementation plan relating to" I/M programs. 42 U.S.C. § 7604(f)(3). Thus, while *Korleski* involved the regulator's choice of what control standard it would require from permit applicants, Plaintiffs here seek to enforce SIP requirements that apply directly to Agency Defendants, Compl. ¶¶ 142-46, and that Congress expressly chose to make enforceable through citizen suits, 42 U.S.C. § 7604(f)(3). The statutory term "violation" must be read to include Agency Defendants' conduct here because to hold otherwise would render Congress's inclusion of I/M requirements within § 7604(f)(3) meaningless. That provision's explicit reference to I/M programs would serve no purpose if citizen suits could not be used to require state officials to carry out their obligations under those programs.

Second, the CAA citizen suit provision's explicit application to I/M requirements highlights a key distinction between the CAA and ESA that shows why *Korleski* was wrongly decided. Unlike the CAA, the ESA's text does not enumerate the types of requirements that may be enforced through citizen suits. Instead, that statute broadly allows suits against persons "in violation of any provision of [the ESA] or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). Despite acknowledging that courts cannot uncritically apply rules from one statute to another statute with different language, the Sixth Circuit did not consider how this significant difference drove the Supreme Court's analysis of the ESA in *Bennett*. *Korleski*, 681 F.3d at 346 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)). Because the ESA (unlike the CAA) does not specify which requirements are enforceable through citizen suits, the Supreme Court was forced to look elsewhere in the ESA for help interpreting "violation" and found that the broader statutory context prohibited citizen suit claims alleging the government's general "maladministration" of broad statutory duties. *Bennett*, 520 U.S. at 174; *see id.* at 176 (noting plaintiffs alleged Secretary violated duty to "use the best scientific and commercial data available" in making decisions under ESA). Here, the Court does not need to look far for the applicable limiting principle: 42 U.S.C. § 7604(f) informs this Court's reading of what "violations" are actionable under the CAA's citizen suit provision, and that provision explicitly lists the very I/M program requirements that Agency Defendants are alleged to be violating.

Accordingly, the Court should reject *Korleski* and find the Complaint adequately states a claim for relief under the CAA.

**CONCLUSION**

For the foregoing reasons, the Court should deny Agency Defendants' Motion to Dismiss.

Dated: October 19, 2026

Respectfully submitted,

MARILYN C. JONAS
GORDON-DARBY HOLDINGS, INC.,

By and through their attorneys,

*<u>/s/ Andrew D. Knudsen</u>*
Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew D. Knudsen*
ANDREW D. KNUDSEN