**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE**

MARILYN C. JONAS, et al.,

*Plaintiffs*,

v.

KELLY AYOTTE, in her official capacity as Governor of the State of New Hampshire, et al.,

*Defendants*.

Civil Action No. 26-cv-00600-LM-TSM

**PLAINTIFFS' OBJECTION TO EXECUTIVE DEFENDANTS' MOTION TO DISMISS**

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com

*Counsel for Plaintiffs Marilyn C. Jonas and Gordon-Darby Holdings, Inc.*

October 19, 2026

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2
STANDARD OF REVIEW ........................................................................................ 7
ARGUMENT ........................................................................................................... 8
I. Plaintiffs Have Adequately Alleged that They Have Standing to Challenge Agency Defendants' Termination of the I/M Program. ........................................................ 8
A. The Complaint Sufficiently Alleges Injury in Fact. .......**Error! Bookmark not defined.**
B. Plaintiffs' Harms Are Fairly Traceable to Agency Defendants' Termination of the I/M Program. ..........................................................**Error! Bookmark not defined.**
C. Relief from This Court Will Likely Redress Plaintiffs' Injuries. . **Error! Bookmark not defined.**
D. New Hampshire's Enactment of HB2 Does Not Defeat Plaintiffs' Standing. ....... **Error! Bookmark not defined.**
II. The Eleventh Amendment Does Not Bar Plaintiffs' Citizen Suit Claim. ......................... 10
III. The Complaint States a Claim for Relief under the CAA's Citizen Suit Provision. ......... 17
A. New Hampshire's I/M Regulations and Programmatic Commitments Are Enforceable SIP Requirements. ......................................................**Error! Bookmark not defined.**
B. The Complaint Alleges Facts Showing Agency Defendants Are "In Violation" of the New Hampshire SIP's I/M Requirements. .....................**Error! Bookmark not defined.**
C. The Sixth Circuit's Decision in *Korleski* Does Not Defeat Plaintiffs' Claim. ....... **Error! Bookmark not defined.**
CONCLUSION ......................................................................................................... 25

Plaintiffs Marilyn Jonas and Gordon-Darby Holdings, Inc. ("Gordon-Darby") submit this Objection opposing the Motion to Dismiss, ECF 14, filed by Defendants Governor Kelly Ayotte, the Executive Council of the State of New Hampshire ("Executive Council"), and individual Executive Councilors Joseph D. Kenney, Karen Liot Hill, Janet Stevens, John Stephen, and David K. Wheeler (the "Councilors"), referred to collectively as the "Executive Defendants." Executive Defendants seek dismissal of Plaintiffs' claim against them under Rule 12(b)(1) on standing and sovereign immunity grounds and under Rule 12(b)(6) for failure to state a claim.

Executive Defendants' Motion to Dismiss largely reiterates the arguments asserted in the Agency Defendants' separate motion to dismiss, ECF 15, and should be denied for the same reasons set forth in Plaintiffs' separately filed objection to that motion, ECF 20. This Objection responds to additional arguments raised by Executive Defendants based on their purported lack of involvement in the vehicle emissions inspection and maintenance ("I/M") program that is the subject of Plaintiffs' Clean Air Act ("CAA") citizen suit here. Executive Defendants contend that Plaintiffs lack standing to sue them, that they are not subject to suit under *Ex parte Young*, and that Plaintiffs have not adequately alleged a CAA citizen suit claim against them, all premised on their denial that Executive Defendants "are responsible for implementing and enforcing any part of the I/M obligations set forth in" New Hampshire's state implementation plan ("SIP"). ECF 14 at 5.

For the reasons discussed below, the Court should reject these arguments. Despite their protests here, Executive Defendants play an important role in the I/M program via their responsibility over retaining the contracted vendor necessary to administer the program, and their refusal to exercise that power is part of the CAA violation at issue here. Indeed, in Gordon-Darby's prior litigation against New Hampshire state officials regarding the program's termination, the State repeatedly represented to this Court that it could not resume implementing the I/M

program—even in the face of the Court's preliminary injunction—without Executive Defendants' approval. Yet now that it is advantageous for Executive Defendants to stand apart, they disavow any such responsibility. Executive Defendants should be judicially estopped from arguing that they lack any authority over the I/M program's implementation. But even if Executive Defendants are allowed to assert these arguments, the Court should reject them and deny the Motion to Dismiss.

## BACKGROUND

Under the CAA, EPA establishes and periodically revises national ambient air quality standards ("NAAQS") for certain pollutants, including ozone, at levels set to protect the public health and welfare. 42 U.S.C. § 7409; 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19. Each state must develop a SIP that "provides for implementation, maintenance, and enforcement" of the NAAQS in the state. 42 U.S.C. § 7410(a)(1). A SIP must include "enforceable emission limitations and other control measures … as may be necessary or appropriate to meet the" CAA's requirements, as well as "a program to provide for the enforcement of" these measures and "necessary assurances that the State … will have adequate personnel, funding, and authority under State … law to carry [them] out." *Id.* § 7410(a)(2)(A), (C), (E).

For states with areas that EPA designates as not meeting the NAAQS, known as "nonattainment areas," the CAA sets forth additional requirements that must be addressed in the SIP. *See id.* §§ 7410(a)(2)(I), 7501-7515. Several provisions of the CAA require states to develop I/M programs that reduce emissions of ozone-forming pollutants from motor vehicles. For states with ozone nonattainment areas classified as "moderate" nonattainment, the SIP must include a "basic" I/M program. *Id.* § 7511a(b)(4). For nonattainment areas classified as "serious" or worse, the SIP must include a more stringent "enhanced" I/M program for vehicles registered in each urbanized area with a 1980 population of 200,000 or more. *Id.* § 7511a(c)(3).

Congress also created an "ozone transport region" ("OTR") consisting of several northeastern states, including New Hampshire, to better control the interstate transport of ozone and ozone-forming pollutants among these states. *Id.* § 7511c. The OTR states must meet additional SIP requirements, including the adoption of an enhanced I/M program for each metropolitan statistical area with a population of 100,000 or more. *Id.* § 7511c(b)(1)(A).

EPA reviews and either approves or disapproves states' SIPs. *Id.* § 7410(a), (k). EPA must proceed through notice-and-comment rulemaking to act on a state's SIP submission, and its decision is a final agency action subject to judicial review in the courts of appeal. *Id.* § 7607. Once approved, the SIP's contents are incorporated into federal law and are federally enforceable. *See id.* §§ 7413, 7604. If a state wants to amend its SIP, it may submit a revised SIP to EPA for review and approval, *id.* § 7410(*l*), but the state's approved SIP remains in effect and federally enforceable unless and until EPA approves the revision in a final rule. *Gen. Motors Corp. v. United States*, 496 U.S. 530, 540 (1990).

New Hampshire is required to maintain an I/M program in its SIP for portions of the state because it is part of the OTR and because some counties were formerly designated as serious or moderate nonattainment areas for the ozone NAAQS. To satisfy these requirements, New Hampshire adopted (and EPA approved) a statewide I/M program as part of its federally enforceable SIP. *See* 40 C.F.R. § 52.1520(c) (listing N.H. Code Admin. R. Saf-C 3200 and Saf-C 5800 among EPA-approved regulations); *id.* § 52.1520(d) (incorporating New Hampshire's 2011 I/M SIP submission spelling out state's programmatic commitments into SIP); 89 Fed. Reg. 33232 (Apr. 29, 2024) (approving most recent revisions to state's I/M regulations). The New Hampshire Department of Safety ("NHDOS") has primary responsibility for overseeing the I/M program

pursuant to state statutes authorizing it to require vehicle inspections, promulgate implementing regulations, and enforce those requirements. *See, e.g.*, RSA §§ 266:1, 266:1-a (2024).

New Hampshire's program requires annual inspection of all passenger vehicles, including both a computer-based analysis of the vehicle's onboard diagnostic system ("OBD") and an "enhanced safety inspection" of emissions-related equipment and systems for light-duty vehicles less than 20 model years old. N.H. Code Admin. R. Saf-C 3210.05(a), 3222.01, 3218.01, 3219.01, 3220.01-06. Vehicle inspections are carried out by licensed inspection stations authorized to issue inspection stickers by the New Hampshire Division of Motor Vehicles ("NHDMV"). *Id.* 3204.01-3205.11. The I/M program also cannot operate without the services of a vendor contracted by NHDOS to administer and support the program, including by supplying inspection stations with OBD testing hardware, software, technical support, training, and inspection stickers. Compl. ¶¶ 103-06. From the OBD program's initiation in 2004 until its premature termination in February 2026, Gordon-Darby's subsidiary Gordon-Darby NHOST Services, Inc., served as the I/M program vendor. *Id.* ¶ 107.

In June 2025, the New Hampshire General Court passed legislation known as House Bill 2 ("HB2") containing provisions eliminating the state's I/M program. 2025 N.H. Laws Ch. 141, §§ 141:244-141:256. HB2 repealed the statutory provisions underlying both the emissions inspection program and the related program for vehicle safety inspections, including the provisions: authorizing NHDOS to require inspections and establishing the frequency and timing of such inspections; establishing the fee for inspection stickers; providing for enforcement against motorists and inspection stations; and specifying inspection requirements for emission control equipment and OBD systems. *Id.* § 141:253 (repealing, *inter alia*, RSA §§ 260:6-b, 266:1, 266:1-

a, 266:2, 266:5, 266:6, and 266:59-b). HB2 also defunded New Hampshire's motor vehicle air pollution abatement fund, which pays for the I/M program's administration. *Id.* § 141:253(I).

HB2's repeal provisions took effect without any EPA approval. The law requires the New Hampshire Department of Environmental Services ("NHDES") to *submit* a SIP revision to EPA seeking to "alter the emissions testing program consistent with" HB2. *Id.* § 141:254. But HB2's repeal of the I/M program takes effect regardless of whether, when, or how EPA acts on that SIP revision. *Id.* § 141:256(II), (III). In particular, under HB2 the repeal of NHDOS's authority to require vehicle inspections (which underpins the entire program) took effect on January 31, 2026.

NHDES submitted a revised SIP to EPA on December 24, 2025, seeking to remove the I/M program from New Hampshire's SIP, along with a petition asking EPA to remove the State from the OTR. Compl. ¶¶ 112, 115. EPA did not act on either of NHDES's submissions before HB2's repeal provisions took effect. *See id.* ¶¶ 113, 116. Nonetheless, Defendants proceeded to terminate New Hampshire's I/M program without the necessary EPA approval.

On September 16, 2025, NHDOS notified Gordon-Darby NHOST that it was terminating its I/M program vendor contract effective January 31, 2026. *Id.* ¶ 121. Likewise, on November 19, 2025, NHDMV advised inspection stations that they would no longer be authorized to perform inspections under the I/M program or issue inspection stickers after January 31, 2026. *Id.* ¶ 122. On January 27, 2026, this Court issued a preliminary injunction requiring the Commissioners of NHDOS and NHDES to resume and continue implementing the I/M program beyond HB2's scheduled termination date.[1] *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, 817

[1] The First Circuit later stayed the preliminary injunction pending appeal, holding that by filing suit before the I/M program's termination, Gordon-Darby had likely commenced its litigation before a SIP violation occurred. *Gordon-Darby Holdings, Inc. v. Quinn*, 174 F.4th 255 (1st Cir. 2026). In response, Gordon-Darby voluntarily dismissed its previous suit without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i). The issue identified by the First Circuit is not

F. Supp. 3d 82, 108 (D.N.H. 2026). But on February 4, 2026, the Executive Council voted to deny the Commissioners' request to keep Gordon-Darby NHOST's vendor contract in effect for a limited period, thus leaving New Hampshire without any approved vendor to administer its I/M program as required by the SIP. Compl. ¶¶ 126-28. Citing the Executive Council's decision, on February 13, 2026, NHDOS informed the public that the I/M program was "suspended until further notice," revoked licensed inspection stations' authority to conduct inspections and issue inspection stickers, and confirmed that its contract with Gordon-Darby NHOST as the vendor hired to administer the I/M program had been terminated. *Id.* ¶¶ 129-31. Since that time, Defendants have not resumed implementation or enforcement of the I/M program codified in New Hampshire's applicable SIP. *Id.* ¶ 132.

Plaintiffs Marilyn Jonas and Gordon-Darby commenced this litigation on July 22, 2026. *See id.* p. 27. Ms. Jonas is a New Hampshire resident who suffers from asthma and is concerned that her symptoms will worsen from exposure to the increased air pollution caused by the I/M program's termination. *Id.* ¶¶ 19-37. Gordon-Darby is the sole owner of the former I/M program vendor, Gordon-Darby NHOST, and has suffered economic harm from lost revenue under the vendor contract and lost opportunity to bid on future contracts. *Id.* ¶¶ 42-51. The Complaint asserts a single claim for relief under the CAA's citizen suit provision, alleging that Defendants are "in violation of" an "emission standard or limitation" under the CAA because they have ceased implementing the I/M program requirements codified in New Hampshire's applicable SIP. *Id.* ¶¶ 138-147; *see* 42 U.S.C. § 7604(a), (f)(3).

---

present in this case, since Plaintiffs commenced this suit after Defendants terminated New Hampshire's I/M program.

Shortly after Plaintiffs commenced this suit, EPA published two notices in the Federal Register of its proposed actions in response to New Hampshire's December 24, 2025 submissions. 91 Fed. Reg. 51640 (Aug. 11, 2026); 91 Fed. Reg. 51644 (Aug. 11, 2026). In those notices, EPA proposed to grant New Hampshire's petition for removal from the OTR and to conditionally approve New Hampshire's submission removing the I/M program requirements from its SIP.[2] In light of these proposed actions, Plaintiffs filed a motion to stay this case pending EPA's final action in those rulemakings on September 14. ECF 13. Defendants opposed that motion. ECF 16. The Court has not ruled on Plaintiffs' stay motion.

On September 21, 2026, Defendants moved to dismiss this case for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Defendants filed separate motions to dismiss on behalf of Executive Defendants, ECF 14, and Commissioner Quinn, Commissioner Scott, and Director Marasco (the "Agency Defendants"), ECF 15.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff must make factual allegations sufficient to 'state a claim to relief that is plausible on its face.'" *Gallagher v. Funeral Source One Supply & Equip. Co.*, No. 14-cv-115-PB, 2015 WL 773737, *1 (D.N.H. Feb. 24, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is "plausible" if the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The same plausibility standard applies to both a motion to dismiss for lack of standing under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See*

[2] Plaintiffs each submitted comments to EPA identifying substantial legal and analytical defects in EPA's proposals. *See* https://www.regulations.gov/comment/EPA-HQ-OAR-2026-2179-0027 (comments of Marilyn Jonas); https://www.regulations.gov/comment/EPA-HQ-OAR-2026-2179-0025 (comments of Gordon-Darby).

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016). The Court's assessment of standing is "fundamentally distinct," however, from its analysis of whether the plaintiff has stated a claim for relief, and "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Id.* at 734 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

In deciding a motion to dismiss, the Court must "accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor." *Riley*, 2011 WL 540869 at *1 (citing *Gargano v. Liberty Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009)). In addition to the complaint itself, the Court may consider documents attached to the complaint and judicially noticeable facts. *Id.* (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); *see* Fed. R. Evid. 201.

## ARGUMENT

### I. Plaintiffs Have Adequately Alleged Standing Because Their Injuries Are Fairly Traceable to Executive Defendants' Actions.

To demonstrate Article III standing, a plaintiff must establish three elements: injury in fact, causation, and redressability. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An "injury in fact" requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (citation modified). The causation element requires that the injury be "fairly traceable to the challenged action of the defendant." *Id.* (citation modified). Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation modified).

Executive Defendants' challenge to Plaintiffs' standing repeats almost verbatim the same arguments presented in Agency Defendants' motion to dismiss. *Compare* ECF 14 at 6-18; *with* ECF 15 at 5-17. Plaintiffs' separately filed objection to Agency Defendants' motion to dismiss

responds to those arguments in detail, *see* ECF 20 at 2-15, and to avoid repetition those responses are incorporated in full by reference here.

On the causation prong, Executive Defendants additionally argue that Plaintiffs' claimed harms are not fairly traceable to them because Executive Defendants specifically do not have "any responsibility or authority to implement the I/M program or the cited NHDOS rules." ECF 15 at 13. But the sequence of events leading up to the program's termination gives lie to Executive Defendants' claimed lack of involvement. While other actors—namely the Agency Defendants—surely played a role too, Article III does not require that a defendant's actions be the only cause of a plaintiff's harm. Instead, the injury need only be "fairly traceable" to the challenged conduct. *Lujan*, 504 U.S. at 560 (citation modified). As such, the defendants' conduct can be just "one among multiple causes" for the claimed injury. *Conservation Law Found. v. Acad. Express, LLC*, 129 F.4th 78, 87 (1st Cir. 2025) ("*CLF*").

Here, Executive Defendants' role in the I/M program's termination is clear and direct. Prior to the Governor and Executive Council's actions, NHDOS had granted Gordon-Darby NHOST limited authorization to continue operating the I/M program past January 31, 2026, allowing vehicle owners to continue obtaining inspections consistent with this Court's then-operative preliminary injunction. Compl. ¶ 124. On February 4, 2026, the Governor and Executive Council held a special meeting at which the Executive Council denied NHDOS's request to retain Gordon-Darby NHOST's contract in effect, thus terminating the vendor contract and rendering the I/M program inoperable. *Id.* ¶ 127-28. Agency Defendants subsequently cited the Executive Council's decision as the basis for their actions suspending the I/M program and revoking inspection stations' authority to conduct inspections. *Id.* ¶¶ 129-31; *see id.* Ex. 10 (suspending I/M program "[a]s a

result" of "the Executive Council's denial" of contract extension), Ex. 11 (same). Thus, Plaintiffs' injuries are fairly traceable to Executive Defendants' actions challenged here.

## II. The Eleventh Amendment Does Not Bar Plaintiffs' Citizen Suit Claim.

Defendants' jurisdictional defense based on sovereign immunity, asserted in both Executive Defendants' and Agency Defendants' motions to dismiss, also fails. While the Eleventh Amendment generally prohibits federal suits against a state or state instrumentality, this prohibition is subject to the "well recognized exception" in *Ex parte Young*, 209 U.S. 123 (1908), which allows federal courts to "enjoin state officials to conform future conduct to the requirements of federal law." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (citation modified). That exception authorizes Plaintiffs' suit against all Defendants for the claims and requested relief at issue here.

### A. Defendants Are Properly Subject to Suit under *Ex parte Young* for Violating Their Obligations Under New Hampshire's SIP.

Under *Ex parte Young*, a private plaintiff may assert a claim against a state official if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Courts have routinely relied on *Ex parte Young* to allow CAA citizen suits against state officials seeking their compliance with a SIP's I/M requirements. *See, e.g.*, *Clean Air Council v. Mallory*, 226 F. Supp. 2d 705, 711-22 (E.D. Penn. 2002); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1165-76 (D. Ariz. 2001); *Ky. Res. Council v. EPA*, 304 F. Supp. 2d 920, 928-29 (W.D. Ky. 2004).

Here, Plaintiffs allege Defendants are violating their obligations under New Hampshire's I/M program, which is a matter of federal law due to the program's incorporation into the state's SIP. Compl. ¶¶ 96, 114, 141; 40 C.F.R. § 52.1520(c), (d); *see Clean Air Council*, 226 F. Supp. 2d

at 717-22 (suit to enforce state's SIP alleged violations of federal, not state law); *Sweat*, 200 F. Supp. 2d at 1168-71. Plaintiffs also seek prospective relief to halt Defendants' violation of federal law: an injunction requiring Defendants to carry out the I/M program as the current SIP requires and a declaration that Defendants are in violation of the SIP and that HB2's provisions repealing the I/M program are preempted. Compl. at 27; *Verizon*, 535 U.S. at 645-46 (allowing claims for injunctive and declaratory relief). Accordingly, the claim asserted in this suit does not run afoul of the Eleventh Amendment.

To be subject to suit under *Ex parte Young*, a state official must also have "some connection" to the alleged violation. *Cotto v. Campbell*, 126 F.4th 761, 772-73 (1st Cir. 2025). Each Defendant named in the Complaint has the requisite responsibilities under the I/M program to be appropriately named as defendants. Focusing on Agency Defendants first, Commissioner Quinn oversees NHDOS. RSA § 21-P:4. His duties include administering and enforcing motor vehicle laws, and the laws underlying the I/M program task NHDOS with administering and enforcing the program's requirements. *See* RSA § 266:1 (2024). Commissioner Scott oversees NHDES, which must "[c]arry[] out a program of inspection and testing of all modes of transportation" and administer the motor vehicle air pollution abatement fund used to pay for the I/M program. RSA §§ 125-C:6, 125-S:3. Director Marasco oversees NHDMV and is responsible for establishing inspection requirements, authorizing inspection stations and mechanics to conduct inspections, and carrying out other duties under the I/M program. RSA § 266:1(I), (V), (VII-a) (2024); N.H. Admin. Code R. Saf-C 3205.03, 3222.08, 3222.09.

Likewise, Governor Ayotte and the Executive Council (collectively and through its individual Councilors) also have a sufficient connection to the I/M program to be sued under *Ex parte Young*. New Hampshire's I/M program cannot operate without the services of a vendor

contracted by the State to administer the program. Compl. ¶ 103. New Hampshire law requires the Governor and Executive Council to review and approve most service contracts between state agencies and their vendors. *See* RSA § 4:15; DAS Manual of Procs., MOP 150 at 4-5. The Governor also determines which contracts must undergo competitive bidding. RSA § 21-I:11(a)(2). Thus, unless the I/M vendor contract falls within one of the recognized exceptions under state law, the Governor and Executive Council have the final say on whether to hire an I/M program vendor, who that vendor will be, and on what terms the vendor will administer the program. Indeed, in *Gordon-Darby*, the Commissioners themselves argued repeatedly to both this Court and the First Circuit that the Governor and Executive Council have "ultimate authority" over any I/M vendor contract and that the Commissioners were powerless to retain a vendor to run the I/M program without their approval. *See, e.g.*, *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508, ECF 39 at 7-8, ECF 47 at 4-5, ECF 51 at 10-13; *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209, Doc. 00118462675 at 33-36; *see also infra* pp. 21-25.

Defendants do not meaningfully dispute the roles they play in carrying out the I/M program. They simply rehash their arguments from elsewhere in their motions to dismiss that the Complaint "does not plausibly allege any ongoing violation" of the SIP and that HB2 eliminated Defendants' "authority to grant the relief which Plaintiffs seek." ECF 14 at 20; ECF 15 at 18-19. But these merits arguments are misplaced in the context of determining if defendants are proper parties under *Ex parte Young*. For purposes of evaluating whether the Eleventh Amendment permits this suit, the Court must assume Plaintiffs will succeed on the merits. *See Town of Barnstable*, 786 F.3d at 139 (noting the "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim") (quoting *Verizon*, 535 U.S. at 646). Furthermore, Defendants are wrong: Plaintiffs have sufficiently alleged a cause of action under the CAA against

all Defendants, and HB2's repeal provisions are preempted, for the reasons discussed in Sections I.D and III of Plaintiffs' objection to Agency Defendants' motion to dismiss, ECF 20 at 11-15, 16-24, and in Section III of this Objection to Executive Defendants' Motion to Dismiss. Thus, Plaintiff's claims for prospective relief against Defendants may proceed under *Ex parte Young*.

**B. The Executive Council Is Subject to Suit under *Ex parte Young*.**

Executive Defendants also argue that the Executive Council (as opposed to the individual Councilors elected to it) is not the type of entity subject to suit under *Ex parte Young* and that the Eleventh Amendment therefore bars any claims against it. ECF 14 at 18-19. But none of Executive Defendants' arguments warrant dismissal.

As an initial matter, the Court need not resolve this issue because Plaintiffs have also sued the five individual Councilors in their official capacities. Compl. ¶¶ 57-61. The Executive Council is an elected five-member body charged under New Hampshire's constitution with advising the Governor "in the executive part of government." N.H. Const. pt. II, art. 60. The Executive Council takes action through its individual Councilors based on a majority of votes cast in meetings at which a quorum is present. *See id.* art. 62 (noting Governor shall hold periodic councils for "ordering and directing the affairs of the state" together "with [the Councilors], or the majority of them"); DAS Manual of Procs., MOP 150 at 1-2 (describing Council procedures). In an abundance of caution, Plaintiffs have sued the Executive Council itself because no single Councilor directs the actions of the Executive Council. But for purposes of this Motion to Dismiss, the Court does not need to decide whether the Executive Council collectively is subject to suit under *Ex parte Young* because Plaintiffs have also sued the individual Councilors. The Supreme Court took the same approach in *Verizon*, holding that because the plaintiffs had properly filed suit against the individual commissioners of the Maryland Public Service Commission, it "need not decide" whether the Commission itself could be sued. *Verizon*, 535 U.S. at 645. Likewise here, Executive

Defendants do not dispute that the individual Councilors are state officials who may be sued under *Ex parte Young* so long as the other requirements of that doctrine are met.

In any event, their arguments for dismissing the Executive Council lack merit. First, they argue that the Executive Council is immune from suit as an "arm of the state." ECF 14 at 18 (quoting *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002)). But "[t]he entity asserting its immunity bears the burden of showing that it is an arm of the state." *Wojcik*, 300 F.3d at 99. Executive Defendants entirely fail to address the "multi-factor analysis" that the First Circuit requires to determine whether an entity is an arm of the state. *See id.* (enumerating seven-factor test) (quoting *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935, 939-40 (1st Cir. 1993)). Thus, Executive Defendants have not carried their burden to justify dismissal.

Second, Executive Defendants assert that the Executive Council is a "state agenc[y]" that shares in the state's sovereign immunity. *See* ECF 14 at 18 (citing *Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011)) (emphasis omitted). But while they list various authorities the New Hampshire constitution grants to the Executive Council, they do not explain why these "powers related to New Hampshire's governance" necessarily make the Executive Council a "state agency" immune from suit. In particular, they fail to distinguish the Executive Council from the Governor, who shares in the "panoply of powers" granted under the state constitution but is herself subject to suit under *Ex parte Young* (provided, again, the other requirements of that doctrine are met).

Indeed, the only apparent distinction is that the Executive Council takes action through the collective decisionmaking of its five Councilors rather than through a single identifiable state official. But the Court should not allow the Executive Council's multi-member structure to prevent it from being held accountable for violating federal law under *Ex parte Young*. Thus, in the event

the Court finds that Plaintiffs' claim against the Executive Council is barred by the Eleventh Amendment, it should at least confirm that the individual Councilors may be sued in their official capacities for the CAA violations alleged in the Complaint.

**C. None of Plaintiffs' Forms of Requested Relief Requires Dismissal on Eleventh Amendment Grounds.**

Defendants' objections to certain forms of relief requested in the Complaint also do not warrant dismissal of Plaintiff's claim. First, Defendants have not shown that the Eleventh Amendment categorically prohibits civil penalties against state officials who violate federal law. There does not appear to be controlling precedent on whether *Ex parte Young* allows plaintiffs to pursue civil penalties from such officials in a CAA citizen suit. While Defendants point to cases rejecting claims for backward-looking civil penalties in Clean Water Act cases, *see* ECF 14 at 22, ECF 15 at 21, it does not follow that *all* requests for civil penalties are impermissibly retrospective.

The Eleventh Amendment bars "[r]elief that is 'tantamount to an award of damages for a past violation of federal law, even though styled as something else[.]'" *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)). But Plaintiffs' request for civil penalties does not fit that description. Plaintiffs seek relief for an ongoing CAA violation, not a past violation. Compl. ¶ 147. And the requested civil penalties would not have "the same effect as a full-fledged award of damages or restitution." *Town of Barnstable*, 786 F.3d at 138 (quoting *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997)). They would not compensate Plaintiffs for the injuries they have suffered, since CAA civil penalties are paid directly to the United States Treasury. 42 U.S.C. § 7604(g). Instead, the Supreme Court has recognized that civil penalties have a coercive effect by encouraging defendants who are currently in violation of their CAA obligations to come into compliance. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185-86 (2000) (noting civil penalties "promote immediate compliance by

limiting the defendant's economic incentive to delay its attainment of permit limits"). In that sense, civil penalties primarily offer prospective relief.

Defendants focus on the possibility that this Court will assess civil penalties for "pre-judgment past violations of the CAA." ECF 14 at 22; ECF 15 at 21. But even if such relief was prohibited, it would not justify dismissing Plaintiffs' entire request for civil penalties. The Complaint merely requests assessment of "civil penalties in an appropriate amount." Compl. at 27. If Plaintiffs prevail here, the Court may craft an "appropriate" civil penalty assessment that does not implicate Defendants' retrospectivity concerns. For example, the Court may assess civil penalties that begin accruing only *after* the Court finds an ongoing violation of the CAA, giving Defendants an incentive to swiftly come into compliance. Thus, it would be premature to dismiss Plaintiffs' request for civil penalties at this stage of the litigation. To the extent the Court believes that the Eleventh Amendment bars retrospective civil penalties, the appropriate remedy would be (at most) to only dismiss Plaintiffs' request for relief with respect to those penalties while leaving Plaintiffs' other claims for relief intact.

Second, Plaintiffs' request for declaratory relief is also permissible. Plaintiffs seek a declaration that Defendants "have violated and are in violation of" the SIP's requirements. Compl. at 27. To the extent the "have violated" portion of that request is "retrospective," *see* ECF 14 at 23, ECF 15 at 21, it does not follow that the Eleventh Amendment prohibits it. *See Verizon*, 535 U.S. at 646 (holding request for declaration on "the *past*, as well as the *future*, ineffectiveness of [the state commission's] action" was not barred). But even if it did, the appropriate remedy would be to simply limit Plaintiffs' requested relief to a present tense declaration that Defendants "are in violation" of the SIP.

### III. The Complaint States a Claim for Relief against Executive Defendants under the CAA's Citizen Suit Provision.

Executive Defendants' argument for dismissal on Rule 12(b)(6) grounds (brief as it is) generally repeats the same arguments presented in Agency Defendants' motion to dismiss. *Compare* ECF 14 at 23-24; *with* ECF 15 at 22. Plaintiffs' separately filed objection to Agency Defendants' motion to dismiss responds to those arguments in detail, *see* ECF 20 at 16-24, and those responses are incorporated in full by reference here.

But unlike Agency Defendants, Executive Defendants present an additional argument forcefully disavowing any connection to the I/M program whatsoever. They assert that they cannot possibly be in violation of the CAA or New Hampshire's SIP because, "[s]imply put, the Governor and Council Defendants do not implement or enforce the I/M program, do not implement or enforce NHDOS administrative rules, and are not alleged to have engaged in any unlawful act under the SIP, the CAA, or any law." ECF 14 at 24. In addition to being wrong on the law, Executive Defendants' argument flatly contradicts the State's representations to this Court in *Gordon-Darby*, where the Commissioners repeatedly argued that it was impossible to implement the I/M program without the Governor and Executive Council's approval of a contract with an I/M program vendor. Accordingly, Executive Defendants should be judicially estopped from denying their statutory role in the I/M program's implementation and their request for dismissal for failure to state a claim should be denied.

#### A. New Hampshire's Commitment to Implement the I/M Program Is an Enforceable SIP Requirement.

For purposes of citizen suits, the CAA's definition of "emission standard or limitation" specifically includes "any condition or requirement under an applicable [SIP] relating to … vehicle inspection and maintenance programs." 42 U.S.C. § 7604(f)(3). A state's obligations and commitments under its SIP to implement and enforce its I/M program clearly meet this definition.

*See Sweat*, 200 F. Supp. 2d at 1168-71 (finding termination of Arizona's I/M program violated SIP); *Ky. Res. Council*, 304 F. Supp. 2d at 926 (finding termination of Kentucky district's I/M program violated SIP); *Clean Air Council*, 226 F. Supp. 2d at 720-21 (finding Pennsylvania's failure to fully implement second phase of I/M requirements by deadline in SIP violated CAA).

New Hampshire's SIP incorporates the state's emissions I/M regulations codified at N.H. Admin. Code Saf-C 3200. 40 C.F.R. § 52.1520(c) (listing Saf-C 3200 among EPA-approved regulations in New Hampshire SIP with limited exceptions); *see* 89 Fed. Reg. at 33233 (approving most recent version of I/M regulations). The SIP also incorporates the program implementation commitments that New Hampshire made in 2011 when submitting its I/M program to EPA in its current form.[3] 40 C.F.R. § 52.1520(d) (incorporating "SIP Narrative associated with New Hampshire Vehicle Inspection and Maintenance Program SIP Revision"); *see* 78 Fed. Reg. 5292 (Jan. 25, 2013). Thus, New Hampshire's emissions I/M regulations *and* the programmatic commitments it made to secure EPA's approval of those regulations are "condition[s] or requirement[s] under an applicable implementation plan relating to [a] vehicle inspection and maintenance program[]," and accordingly they are "emission standard[s] or limitation[s]" enforceable through a citizen suit. 42 U.S.C. § 7604(f)(3).

As relevant to Executive Defendants, this means that New Hampshire's specific commitment to *actually implement* the I/M program codified in its SIP is itself an enforceable requirement of the SIP. Courts have long recognized that the "emission standards or limitations" enforceable under 42 U.S.C. § 7604 are not limited to the numerical emission limits or other

[3] That SIP narrative is not published in the Code of Federal Regulations but is on file with EPA at https://www.regulations.gov/document/EPA-R01-OAR-2012-0149-0005. NHDES, "State of New Hampshire: Motor Vehicle Inspection and Maintenance State Implementation Plan Revision" (Nov. 1, 2011) ("2011 SIP Narrative").

substantive or procedural requirements codified in the state's regulations or incorporated in permits. Citizens may also file suit to enforce any "specific strategy or commitment in the SIP" made by the state, so long as the suit seeks to compel the state's compliance with a specific, identifiable commitment and not merely "general compliance with" the NAAQS. *Coal. Against Columbus Center v. City of New York*, 967 F.2d 764, 769-70 (2d Cir. 1992) (quoting *Council of Commuter Orgs v. Gorsuch*, 683 F.2d 648, 670 (2d Cir. 1982)).

Thus, courts have found that a state's commitment in a SIP to adopt and enforce emission limits is itself an "emission standard or limitation" enforceable through a citizen suit. *See id.* at 771 (allowing suit to enforce city's commitment to impose "mitigating measures" if a proposed project's emissions will violate or exacerbate air standard); *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181-82 (9th Cir. 2015) (holding California SIP's commitment to adopt and implement measures to achieve specific emission reductions in the future was enforceable through citizen suits); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021) (finding same for commitment to prepare report and implement measures developed therein if area does not meet air quality milestones or attainment). Courts have also found that a state's failure to implement the requirements of its SIP violates an enforceable commitment and is actionable in a citizen suit. *See Friends of the Earth v. Carey*, 552 F.2d 25, 35-36 (2d Cir. 1977) (holding court erred in finding state and city "were not obligated to enforce the [SIP]"); *see also Friends of the Earth v. Carey*, 535 F.2d 165, 169 (2d Cir. 1976) (holding that "once adopted by a state and approved by the EPA, [a SIP] becomes controlling and *must be carried out* by the state") (emphasis added).

Indeed, it was precisely this failure to uphold a programmatic commitment that formed the basis of state officials' CAA violation in each of the four previous cases in which states stopped implementing their I/M programs without EPA approval. In *Sweat*, *Clean Air Council*, and

*Kentucky Resources Council*, the courts did not identify any specific regulation in the relevant state's administrative code that the state was violating by terminating its I/M program. Instead, the "emission standard or limitation" violated in each case was simply the state's commitment in its SIP to "compl[y] with its own federally mandated plan." *Clean Air Council*, 226 F. Supp. 2d at 722; *see also Sweat*, 200 F. Supp. 2d at 1171 ("[T]he repeal of [specific I/M requirements], and in turn Arizona's subsequent non-enforcement of the EPA-approved SIP, constituted a violation of federal law."); *Ky. Res. Council*, 304 F. Supp. 2d at 926 (finding liability because applicable SIP "requires that Jefferson County maintain a[n I/M] program" and "by terminating [it], the District violated federal law by eliminating the program").

Here, New Hampshire's SIP includes a clear commitment to implement the I/M program. The 2011 SIP Narrative, which is incorporated in the SIP, 40 C.F.R. § 52.1520(d), states New Hampshire "has committed to implementing a modified OTR low-enhanced I/M program state-wide" and describes in detail the various program elements that New Hampshire will carry out, including elements that will be performed by the contracted I/M program vendor. 2011 SIP Narrative at 7; *see generally id.* at 7-23. That commitment is enforceable through a CAA citizen suit like the one pleaded here.

### B. The Complaint Sufficiently Alleges Executive Defendants Are "In Violation" of the Requirement to Implement the I/M Program.

The Complaint plausibly alleges that Executive Defendants are currently violating the SIP's obligation to carry out New Hampshire's I/M program based on their role in retaining a contracted vendor to administer that program. Plaintiffs allege that the I/M program cannot operate without a vendor retained to administer it on the State's behalf. Compl. ¶ 103. With limited exceptions, Agency Defendants cannot enter into any contract retaining such a vendor without the approval of the Governor and Executive Council. *Id.* ¶¶ 52, 56-61; *see* RSA § 4:15; DAS Manual

of Procs., MOP 150 at 4-5. On February 4, 2026, the Executive Council declined to extend Gordon-Darby NHOST's contract as the program vendor, thereby rendering the I/M program inoperable and resulting in its indefinite suspension. Compl. ¶¶ 127-31. To date, the I/M program remains inoperable and Executive Defendants have not taken any action to implement the program as required by the SIP, including by carrying out their role in retaining a program vendor. *Id.* ¶¶ 132, 142-43. These allegations state a claim that Executive Defendants are "in violation" of the New Hampshire SIP's I/M program requirements. 42 U.S.C. § 7604(a)(1).

In response, Executive Defendants categorically deny that they have any part in "implement[ing] or enforc[ing] the I/M program." ECF 14 at 24. But this argument is implausible on its face. Executive Defendants do not, and cannot, dispute that New Hampshire's I/M program requires retention of a vendor and that Agency Defendants generally cannot hire one without the Governor and Executive Council's approval. Nor do they explain how the I/M program in New Hampshire's SIP could possibly be implemented *without* the Governor and Executive Council's involvement.[4] Accordingly, they have not shown that their dismissal is warranted at this stage.

Moreover, Executive Defendants' arguments here are wholly inconsistent with the repeated representations made to this Court and the First Circuit in Gordon-Darby's prior litigation involving the I/M program's termination. The question of the Governor and Executive Council's role in implementing the I/M program was placed squarely at issue when the state official defendants in that case sought a stay of the Court's preliminary injunction pending appeal. There, the NHDOS and NHDES Commissioners argued that Gordon-Darby's injuries were not

[4] While Gordon-Darby has previously argued that the State's prior contracts with Gordon-Darby NHOST fell within one of the exceptions to the requirement for Governor and Executive Council approval, Defendants do not appear to share that view. *See Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, 821 F. Supp. 3d 202, 214 (D.N.H. 2026).

redressable through an order requiring them to resume the I/M program because the Commissioners were powerless to enter a contract with an I/M program vendor without the Governor and Executive Council's involvement. *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508 (D.N.H. Feb. 10, 2026), ECF 39 at 7-8. Despite being subject to a federal court order requiring them to "take all steps necessary to resume and ensure the continued implementation and enforcement of the State of New Hampshire's vehicle inspection and maintenance program," the Commissioners maintained that no meaningful relief was available because Gordon-Darby had not sued the Governor and Executive Council, who retained the "ultimate authority to approve or deny state contracts." *Id.* at 8; *see also Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508 (D.N.H. Feb. 20, 2026), ECF 47at 5 (insisting Commissioners had "done all they can" to resume I/M program by requesting Executive Council's approval of vendor contract extension).

The Commissioners continued to assert this position on appeal to the First Circuit, arguing in the motion for a stay from that court that a preliminary injunction limited to the Commissioners could not redress Gordon-Darby's harm because "any new contract would have to go through a state procurement process and ultimately be approved by New Hampshire's Governor and Executive Council." *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209 (1st Cir. Mar. 19, 2026), ECF 00118419058 at 9. Indeed, the Commissioners are *still advancing this position with the First Circuit today*, maintaining in their pending merits brief that they lack independent authority to "reinstate the contract or the I/M program" and that "any renewal of the Contract would require approval by independent constitutional entities—the Governor and Executive Council." *Gordon-Darby Holdings, Inc. v. Quinn*, No. 26-1209 (1st Cir. June 16, 2026), ECF 00118462675 at 33-34.

The same issue was presented to this Court again when Gordon-Darby moved to hold the Commissioners in contempt for failure to comply with the preliminary injunction. In response, the Commissioners presented extensive arguments regarding their view of the Governor and Executive Council's essential role in review and approval of any I/M program vendor contract. *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, No. 25-cv-508 (D.N.H. Mar. 27, 2026), ECF 51 at 10-13. The Commissioners asserted they "cannot be held in contempt for failing to take action—contracting with an I/M program vendor—that … is beyond their unilateral authority." *Id.* at 11. Crucially, this Court accepted and relied on the Commissioner's arguments in deciding not to hold them in contempt. The Court recognized that New Hampshire did not have "a vendor in place to operate the I/M program as contained in the SIP" but held that the Commissioners "*cannot be faulted for the Executive Council's decision* not to extend the termination date of Gordon-Darby NHOST's contract," indicating the Court's acceptance that the Executive Council was a necessary party to the I/M program's implementation. *Gordon-Darby Holdings, Inc. v. N.H. Dep't of Safety, Comm'r*, 831 F. Supp. 3d 144, 148 (D.N.H. 2026) (emphasis added).

In sum, state officials have repeatedly and consistently represented to this Court that the Governor and Executive Council not only have a role in New Hampshire's I/M program, but are so fundamentally important to that program that it cannot be implemented without their active involvement and approval. Based on these past representations alone, the Court can easily reject Executive Defendants' newfound disavowal of any connection to the I/M program.

In fact, the Court should find that Executive Defendants are judicially estopped from arguing that they "do not implement or enforce the I/M program." ECF 14 at 24. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749

(2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Its purpose is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (citation modified). Judicial estoppel is generally appropriate where: (1) the party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court to accept its earlier position; and (3) the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750.

Here, Executive Defendants' position is clearly inconsistent with the arguments asserted in *Gordon-Darby*. Whereas the Governor and Executive Council now disavow any responsibility whatsoever for implementing the I/M program, their review and approval of any vendor contract was previously held out as an essential and indispensable requirement for resuming the program that was mandated by New Hampshire's constitution and RSA § 4:15. This Court accepted that previous position in its order denying Gordon-Darby's motion for contempt, holding that the Commissioners had taken sufficient steps to avoid being held in contempt because they "cannot be faulted" for failing to resume the I/M program given the need for Executive Council approval. *Gordon-Darby Holdings, Inc.*, 831 F. Supp. 3d at 148.

Finally, Plaintiffs would suffer an unfair detriment from Executive Defendants' sudden change in position. The State previously avoided resuming its I/M program by arguing that the Governor and Executive Council were essential for its implementation and were necessary parties to any injunction. Plaintiffs duly included them as Defendants in this suit to address that alleged defect. If the Court dismisses Executive Defendants from this case based on their sudden reversal in position, Plaintiffs may be unable to obtain meaningful relief even if they ultimately prevail here. If this Court eventually orders Agency Defendants to resume New Hampshire's I/M program

at the conclusion of this litigation, they will likely fall back on their former strategy of claiming they are unable to comply without the Governor and Executive Council's approval. The Court should not allow Defendants to continue their shell game and indefinitely delay compliance with the SIP's I/M requirements.[5]

In sum, the Court should estop Executive Defendants from now arguing that they do not implement or enforce New Hampshire's I/M program, and in any event should reject their argument that Executive Defendants' role in that program is too attenuated to support Plaintiffs' claim that they are in violation of New Hampshire's SIP.

**CONCLUSION**

For the foregoing reasons, the Court should deny Executive Defendants' Motion to Dismiss.

Dated: October 19, 2026

Respectfully submitted,

MARILYN C. JONAS
GORDON-DARBY HOLDINGS, INC.,

By and through their attorneys,

*<u>/s/ Andrew D. Knudsen</u>*
Allison D. Wood (DC Bar No. 466928)
Andrew D. Knudsen (DC Bar No. 1019697)
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
aknudsen@mcguirewoods.com

Amy Manzelli (NH Bar No. 17128)
Andrian Lee (NH Bar No. 277993)
BCM Environmental & Land Law, PLLC
3 Maple Street
Concord, NH 03301
(603) 225-2585
manzelli@nhlandlaw.com
lee@nhlandlaw.com

[5] To that end, if the Court does dismiss Executive Defendants based on their claimed lack of involvement in the I/M program, Agency Defendants should be estopped from later arguing that they cannot implement the I/M program without Executive Defendants' approval.

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Andrew D. Knudsen*
ANDREW D. KNUDSEN