IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARILYN C. JONAS<br><br>*and*<br><br>GORDON-DARBY HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>KELLY AYOTTE, IN HER OFFICIAL CAPACITY AS THE GOVERNOR OF THE STATE OF NEW HAMPSHIRE,<br><br>*et al.*,<br>Defendants. | Civil No. 26-cv-600-LM-TSM |

**EXECUTIVE DEFENDANTS' REPLY**
**TO PLAINTIFFS' OBJECTION TO MOTION TO DISMISS**

Mark L. Lucas, Bar #274692
Assistant Attorney General
Joshua C. Harrison, Bar #269564
Senior Assistant Attorney General
Environmental Protection Bureau
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

*Counsel for Defendants Governor Kelly Ayotte, Councilor Joseph D. Kenney, Councilor Karen Liot Hill, Councilor Janet Stevens, Councilor John Stephen, and Councilor David K. Wheeler, in their respective official capacities, and the New Hampshire Executive Council*

October 30, 2026

NOW COME Defendants Kelly Ayotte, Governor of the State of New Hampshire, District 1 Executive Councilor Joseph D. Kenney, District 2 Executive Councilor Karen Liot Hill, District 3 Executive Councilor Janet Stevens, District 4 Executive Councilor John Stephen, and District 5 Executive Councilor David K. Wheeler, in their respective official capacities, and the Executive Council of the State of New Hampshire (together the "Executive Defendants"), and, pursuant to LR-7(e)(1), submit this Reply to Plaintiff's October 20, 2026 Objection (ECF-22) to the Executive Defendants' Motion to Dismiss (ECF-14).

**Standard of Review**

Executive Defendants' motion to dismiss does not (as Plaintiffs contend) require the Court to make any type of a "merits ruling" (*see* ECF-22 at 10, 14) but instead presents the Court with questions of law under Rules 12(b)(1) and 12(b)(6) as to whether alleged facts taken as true sufficiently allege standing and state a cause of action under the Clean Air Act ("CAA"). The question is whether the facts alleged "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). The "same plausibility standard" is used to evaluate Rule 12(b)(6) and Rule 12(b)(1) motions. *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 371 (1st Cir., 2023) (citations omitted). Whether a complaint alleges standing is a question of law. *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 8 (1st Cir. 2014); *see also Valentín v. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (distinguishing facial and factual standing challenges). To bring a CAA citizen suit, Plaintiffs must claim an Article III injury "in connection with the alleged CAA violation." *Conserv. Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 83 (1st Cir. 2025). The motion at bar challenges this Court's Article III subject matter jurisdiction, which must be resolved before the Court can even reach the merits of Plaintiffs' case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998).

## I. Plaintiffs Fail to Allege any Violation of the CAA by Executive Defendants That Results in any Injury-in-Fact to Plaintiffs

The invasion of a legally protected interest of the plaintiff by the challenged conduct of a defendant is the "most important" aspect of injury in fact. *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 55 (1st Cir. 1998); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs' incorporated-by-reference argument that they need not allege the invasion of any legally protected interest in order to demonstrate standing (ECF-22 at 11, incorporating ECF 20 at 2–15) does not address Plaintiffs' obligation to allege an Article III injury connected to a CAA violation. *Conserv. Law Found. v. Acad. Express*, 129 F.4th at 83.[1]

Strict adherence to statutory provisions conferring citizen suit authority to sue upon private citizens is required. *Garcia v. Cecos Int'l*, 761 F.2d 76, 81 (1st Cir. 1985). As *Conserv. Law Found. v. Busey* explains, the "linchpin" of citizen suit jurisdiction is thus whether the plaintiff claims "violations of specific provisions of the act or specific provisions of an applicable implementation plan…." 79 F.3d 1250, 1258 (1st Cir. 1996) (quotation omitted). Citizens suits may only be brought against government actors who allegedly "fail to comply with the specific requirements of a state or EPA implementation plan"[2] and such suits "do not encompass statutory directives requiring the creation of such implementation plans in the first place." *Conserv. Law Found. v. Fed. Highway Admin.*, 24 F.3d 1465, 1477 (1st Cir. 1994). The First Circuit in *Federal Highway Admin.* accordingly anchored its jurisdiction in allegations of fairly specific violations of

[1] Plaintiffs' citation to *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016)) is unavailing. *Hochendoner* does not support the proposition that a plaintiff need not allege the invasion of a legally protected interest and did not involve a citizen suit, which must be entirely premised upon a "contention that particular conduct is illegal." *Id. See Conserv. Law Found. v. Acad. Express*, 129 F.4th at 83.

[2] "EPA" as used herein stands for the United States Environmental Protection Agency.

"standards of performance" contained in transportation conformity plans. *Id.* (citing 42 U.S.C. §7604(f)(1)).[3]

Plaintiffs' claims against Executive Defendants are, by contrast, unanchored in any specific and plausibly alleged violation of the CAA or of any condition or requirement of the SIP. The complaint instead generically alleges that all named "State Officials" are violating certain NHDOS rules incorporated into the SIP. *See* ECF-14 at 3–4 (citing ECF-1, ¶¶143–147). As regards Executive Defendants, the complaint simply alleges that Executive Defendants' approval is required for "any contracts associated with implementing and enforcing the I/M obligations set forth in the New Hampshire SIP." ECF-14 at 4–5 (citing ECF-1, ¶¶52, 56). Nowhere in either the complaint or Plaintiffs' objection do they allege a violation of a specific emission limitation by the Executive Defendants.[4]

In an effort to overcome this threshold shortcoming, Plaintiffs assert a new contention (not alleged in the complaint)[5] that State "I/M regulations *and* the programmatic commitments it made to secure EPA's approval of" the NHDOS rules are federally enforceable requirements of the SIP. ECF-22 at 20 (emphasis in original). Plaintiffs attempt to support this unalleged contention with an argument that the SIP narrative (also not mentioned in the complaint) incorporates "program implementation commitments" into the SIP. *Id.*

---

[3] *Coal. Against Columbus Center v. City of New York*, 967 F.2d 764, 767–768 (2d Cir. 1992), cited by Plaintiffs (ECF-22 at 21), likewise addressed "specific commitments" to identify and mitigate violations on a project-by-project basis, rather than a "broader commitment" to implement an entire program. Thus, *Coalition against Columbus Center* involved "specific emissions controls which are enforceable." *CLF. v. Federal Highway Admin*., 24 F.3d at 1478 (citing *Coal. Against Columbus Center*, 967 F.2d at 769–771).

[4] It is perhaps for this reason that Plaintiffs Objection repeatedly (if not exclusively) refers to the obligations of the "state" rather than specific obligations of the Executive Defendants. ECF-22 at 16, 19, 20–21, 23.

[5] This newly raised claim should not be entertained because Plaintiffs may not attempt to bolster a deficient complaint with allegations raised for the first time in response to a motion to dismiss. *In re Colonial Ltd. P'ship Litig*., 854 F. Supp. 64, 79 (D. Conn. 1994) (citing *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)).

Even if the Court were to allow Plaintiffs to backfill their complaint with new allegations raised in response to a motion to dismiss, this argument would still fail. The SIP narrative, which is identified as a "nonregulatory" component of the SIP (78 Fed. Reg. 5292, 5302 (January 25, 2013); 40 C.F.R. §52.1520(e)), is merely a description of how the State carries out the SIP. The SIP narrative itself neither creates any "programmatic commitments" nor constitutes a specific and enforceable SIP condition or requirement that could give rise to a citizen suit. *See Busey*, 79 F.3d at 1258.

While a State must provide EPA with "necessary assurances" of adequate state "personnel, funding, and authority under State . . . law to carry out" the SIP, 42 U.S.C. §7410(a)(2)(E), the SIP does not incorporate the referenced state statutory authorities. As the First Circuit has underscored, CAA citizens suits do not "encompass statutory directives requiring the creation of such implementation plans in the first place." *Conserv. Law Found. v. Fed. Highway Admin.*, 24 F.3d at 1477. New Hampshire's SIP incorporates State I/M program rules, including those which the complaint actually alleges that all named "State Officials" have violated. ECF-1, ¶¶143–47. It is these incorporated State rules that are federally enforceable, not any purported "programmatic commitments" allegedly expressed in a nonregulatory SIP narrative.

By not alleging any violation of the CAA or a SIP condition or requirement by any of the Executive Defendants, Plaintiffs fail to allege injury in fact to any legally protected interest and consequently cannot establish either causation or redressability for their alleged injuries, as discussed below. *See Donahue v. City of Boston*, 304 F.3d 110, 118 (1st Cir. 2002).

## II. Plaintiffs Do Not Allege Any Injury to Themselves Which is Fairly Traceable to the Challenged Conduct of Executive Defendants

The "traceability" component of standing requires that the injury alleged is (or will be) suffered "as a consequence" of the defendants' alleged unlawful conduct. *Johnson v. United States*

*OPM*, 783 F.3d 655, 660–61 (1st Cir. 2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 485 (1982)). Plaintiffs claim to have plausibly alleged that Executive Defendants "are currently violating the SIP's obligation to carry out New Hampshire's I/M program based on their role in retaining a contracted vendor to administer that program" (ECF-22 at 21) but Plaintiffs do not identify any such obligation, let alone any alleged unlawful conduct by the Executive Defendants. The complaint only alleges the violation of certain NHDOS rules by all named "State Officials" but does not allege that such rules are implemented by Executive Defendants. ECF-1, ¶¶143–47 (alleging violations of NHDOS rules); ¶¶53–54 (alleging that Agency Defendants implement and enforce the SIP's I/M obligations); ¶¶52, 54–61 (alleging that Executive Defendants are responsible for approving I/M program contracts).[6]

According to Plaintiffs, Executive Defendants, "play an important role in the I/M program via their responsibility over retaining the contracted vendor necessary to administer the program." ECF-22 at 3. Executive Defendants play an important role in many aspects of State government pursuant to the extensive "panoply of powers" granted to them "by the Constitution and statutes" of New Hamshire. *Barry v. King*, 106 N.H. 279, 281 (1965); *see also* N.H. CONST. pt. II, art. 62 (direction of matters of State "according to the laws of the land"); N.H. CONST. pt. II, art. 46 (nominations and appointments); RSA 4:15 (procurement and expenditures); RSA 9:12 (investigatory authority); RSA 4:29–4:30-a; RSA 4:40 (State property acquisition and conveyances). None of the Executive Defendants' "important role[s]" in State government, however, are regulated by the CAA or are a condition or requirement of the SIP.

[6] For the same reason, Gordon-Darby's private contractual harm cannot be remedied with a citizen suit. *See Middlesex Cty. Sewerage Ass'n v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14, 16–18 (1981). The I/M program vendor contract is simply not an enforceable condition or requirement of the SIP.

The complaint does not mention RSA 4:15 or allege that Executive Defendants' procurement authority thereunder is an emission standard or a condition or requirement of the SIP. Nonetheless, Plaintiffs' objection cites RSA 4:15 to support Plaintiffs' arguments that it was the Executive Council's refusal to extend Gordon-Darby's subsidiary's contract following HB2's repeal of the I/M program that "render[ed] the I/M program inoperable" and resulted in the program's "indefinite suspension." ECF-22 at 23. This argument is contradicted by the complaint which alleges that HB2 repealed the State statutory authority underlying the entire I/M program effective January 31, 2026. ECF-1, ¶¶109–11. Consequently, the complaint does not plausibly allege that Plaintiffs have sustained any harm "as a consequence of'" Executive Defendants' exercise of their procurement authority under RSA 4:15. *See Johnson*, 783 F.3d at 660–661. Redressability, which overlaps with traceability to constitute a singular causation requirement (*Sea Shore Corp.*, 158 F.3d at 56), is similarly a foregone conclusion as a result. [7]

Moreover, procurement in connection with Executive Defendants' State constitutional obligation to direct matters of State according to State law authorizes Executive Defendants to approve contracts for outsourcing the work of any "department of the state government …" RSA 4:15. Such "internal operations" of state government are protected from federal intrusion by the Tenth Amendment. *See Mass. v. United States HHS*, 682 F.3d 1, 12 (1st Cir. 2012) (citing *Printz v. United States*, 521 U.S. 898, 933 (1997) and *New York v. United States*, 505 U.S. 144, 188 (1992)). The Tenth Amendment protects, and the CAA does not regulate and cannot conflict with, "essential attributes of state sovereignty." *Delaware Valley Citizens' Council for Clean Air v.*

[7] Plaintiffs' objection relies entirely on conflict preemption for redressability with respect to their claims against Executive Defendants, which is further addressed in Executive Defendants' motion to dismiss (ECF-14 14-18) and in the reply to Plaintiffs' objection to Agency Defendants' motion to dismiss, filed contemporaneously with this reply.

*Pennsylvania,* 533 F. Supp. 869, 878–879 (E.D. Pa. 1982) (citing *National League of Cities v. Usery*, 426 U.S. 833 (1976)).

Plaintiffs, however, fail to plausibly trace any harms alleged in their complaint to any violation of the CAA by Executive Defendants as a threshold matter. Plaintiffs' overall failure to plausibly allege all three facets of standing is of jurisdictional dimensions and warrants dismissal of their claims against Executive Defendants. As a result, the Court's resolution of the Tenth and Eleventh Amendment constitutional defenses raised in Executive Defendants' motion to dismiss is unnecessary. *See Walden v. City of Providence*, 495 F. Supp. 2d 245, 261 (D. R.I. 2007) (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905).

## III. The Eleventh Amendment Bars Plaintiffs' Claims Against Executive Defendants

### A. The Executive Council Is Immune from Suit under the Eleventh Amendment as an Arm of State Government.

The *Ex parte Young* exception does not apply where a plaintiff "attempt[s] to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011). Eleventh Amendment immunity extends to any entity that is an arm of the state. *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (quotations omitted). As discussed above, the Executive Council is a State constitutional body that performs a central governance role as an arm of the State. Plaintiffs' assertion that Executive Defendants' motion does not justify this conclusion (ECF-22 at 16) is borderline ludicrous.[8] *See* ECF-14 at 18–19 (enumerating Executive Council State constitutional authorities also discussed in Section II above). Plaintiffs' claims against the

[8] Notably, Plaintiffs do not actually challenge the Executive Council's status as an arm of the State, instead merely criticizing Defendants' level of proof thereof. *Id.*

Executive Council are consequently barred by the Eleventh Amendment. *See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939 (1st Cir. 1993).

### B. Plaintiffs' Claims Against the Governor and Individual Councilors Do Not Qualify for the Ex parte Young Exception

Plaintiffs' simple response to the Executive Defendants' Eleventh Amendment argument is that Plaintiffs need only allege that Executive Defendants have "some connection' to the alleged violation."' ECF-22 at 13 (quoting *Cotto v. Campbell*, 126 F.4th 761, 772-73 (1st Cir. 2025)). The full quote of that portion of *Cotto* instead reads as follows:

> Under *Ex parte Young*, plaintiffs may only seek relief from state officials with "some connection with the enforcement of the [allegedly unconstitutional] act." 209 U.S. [123,] 157 [(1908)]. Otherwise, plaintiffs would be "attempting to make the state a party." *See id.*; *see also* [*Doe v.*] *Shibinette*, 16 F.4th [894,] 904–05 [(1st Cir. 2021)] (permitting claims under *Ex parte Young* where the state official sued has authority to grant the relief sought). Therefore, if an injunction against the Commonwealth defendants could not bring about the relief plaintiffs seek, the *Ex parte Young* exception does not apply.

*Cotto,* 126 F.4th at 773 (emphasis supplied). The complaint nowhere identifies any authority vested in Executive Defendants to reinstate the repealed I/M program and does not explain how contracting with a program vendor to implement an unauthorized program would "bring an end to" what Plaintiffs allege to be "a present violation of federal law." *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015).[9]

Plaintiffs' never address the effect of the repeal of State law authority underlying the I/M program on the Executive Council's authority to order and direct "the affairs of the state, according to the laws of the land." N.H. Const. Pt. II, art. 62. Plaintiffs instead argue that conflict preemption allows the federal government to both commandeer and authorize State actors to implement a

[9] Plaintiffs' claims are not redressable for purposes of Article III standing for the same reasons.

repealed I/M program. Simply alleging that "HB2's repeal provisions are preempted" does not, as Plaintiffs argue, permit their claims for prospective relief against Executive Defendants to proceed.[10] ECF-22 at 14–15. HB2 neither repealed RSA 4:15, nor did (or could) HB2 alter or excuse Executive Defendants' obligation to direct matters of State according to State law. *See* N.H. CONST. pt. II, art. 62.

The CAA expressly limits citizen suits to what is permitted by the Eleventh Amendment and thus does not "unequivocally express[] its intent to abrogate" Eleventh Amendment immunity. *See Seminole Tribe v. Fla.*, 517 U.S. 44, 55 (1996). Abrogating sovereign immunity to permit a federal court to mandate internal sovereign state procurement actions protected by the Tenth Amendment (as discussed in Section II) would in any event not constitute a "valid exercise" of Congress's Article I power. *See id.*; U.S. Const. Amend. X.

Plaintiffs accordingly cannot circumvent the Eleventh Amendment by simply suing each Executive Councilor individually to require them to do what Executive Defendants cannot accomplish collectively. ECF-22 at 15. No single Executive Councilor or the Governor is a "state official" unilaterally vested with "authority to grant the relief" which Plaintiffs seek. *See Cotto*, 126 F.4th at 773. Under Plaintiffs' "Individual Councilor" approach, Plaintiffs could sue the General Court in federal court, naming every State legislator as a defendant and demand a mandate that the General Court enact legislation of Plaintiffs' choosing—a patently unconstitutional result. Plaintiffs' claims against Executive Defendants are thus barred by the Eleventh Amendment.

---

[10] Plaintiffs' arguments that the Eleventh Amendment permits "prospective" civil penalties against the State are addressed in the Agency Defendants' Reply.

## IV. Plaintiffs Offer No Basis to Invoke Judicial Estoppel Against Executive Defendants

Judicial estoppel prevents the same litigant from pressing a claim that is inconsistent with a position taken in a prior legal proceeding and which is accepted by the court in the prior case. *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012). Plaintiffs cannot seek to judicially estop Executive Defendants "from denying their statutory role in the I/M program's implementation" based on arguments raised by different litigants (the Commissioners) in the earlier case and which this Court rejected on the merits when it issued the preliminary injunction. ECF-22 at 19, 24.

It was ultimately proven correct that Gordon-Darby's contract claims against the Commissioners were not redressable in that citizen suit because of the Commissioners' lack of authority to reinstate the I/M vendor contract. *Gordon-Darby v. NH Dep't of Safety*, 831 F. Supp. 3d 144, 149 (2026). That was a separate and independent (and one of multiple bases for) dismissal on standing grounds asserted by Commissioners in the prior case.

Here, Executive Defendants seek dismissal of the claims against them because Plaintiffs have not alleged that Executive Defendants' procurement actions under RSA 4:15 are a condition or requirement of the SIP and because such sovereign internal State functions are not and cannot be regulated by the CAA. ECF-14 at 17. The Commissioners raised the same claims in Case 1:25-cv-00508-LM-AJ in Documents No. 20-1 at 9 and ECF-45 at 6–7. Those claims are now before the First Circuit.

## CONCLUSION

Based on all the foregoing and for the reasons set forth in additional detail in Executive Defendants' motion to dismiss, this Court should dismiss Plaintiffs' claims against Executive Defendants.

Respectfully submitted,
KELLY AYOTTE, in her capacity as the Governor of the State of New Hampshire,
THE EXECUTIVE COUNCIL OF THE STATE OF NEW HAMPSHIRE, and its respective members in their official capacities,
DISTRICT 1 EXECUTIVE COUNCILOR JOSEPH D. KENNEY,
DISTRICT 2 EXECUTIVE COUNCILOR KAREN LIOT HILL,
DISTRICT 3 EXECUTIVE COUNCILOR JANET STEVENS,
DISTRICT 4 EXECUTIVE COUNCILOR JOHN STEPHEN,
DISTRICT 5 EXECUTIVE COUNCILOR DAVID K. WHEELER,

By and through their counsel
JOHN M. FORMELLA
ATTORNEY GENERAL

October 30, 2026

/s/ Mark L. Lucas

Mark L. Lucas, Bar #274692
Assistant Attorney General
Joshua C. Harrison, Bar #269564
Senior Assistant Attorney General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, New Hampshire 03301
(603) 271-3679
Mark.L.Lucas@doj.nh.gov
Joshua.C.Harrison@doj.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via the Court's ECF filing system on all counsel of record.

/s/ Mark L. Lucas
Mark L. Lucas, Bar #274692